[Cite as *Guenther v. Springfield Twp. Trustees*, 2012-Ohio-203.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK   COUNTY**

GREG GUENTHER                              :
                                                     :         Appellate Case No. 2010-CA-114
          Plaintiff-Appellee              :
                                                     :         Trial Court Case No. 08-CV-1075
v.                                                  :
                                                     :
SPRINGFIELD TOWNSHIP          :         (Civil Appeal from
TRUSTEES, et al.                           :              Common Pleas Court)
                                                     :
          Defendants-Appellants       :
                                                     :

. . . . . . . . . . .

O P I N I O N

Rendered on the 20th day of January, 2012.

. . . . . . . . .

PAUL J. KAVANAGH, Atty. Reg. #0065418, and ELIZABETH J. DUNN, Atty. Reg.
#0058856, Cole Acton Harmon Dunn, 333 North Limestone Street, Post Office Box 1687,
Springfield, Ohio 45501
          Attorneys for Plaintiff-Appellee

JEFFREY C. TURNER, Atty. Reg. #0063154, and DAWN M. FRICK, Atty. Reg. #0069068,
Surdyk, Dowd & Turner, Co., LPA, 1 Prestige Place, Suite 700, Miamisburg, Ohio 45342
          Attorney for Defendants-Appellants

. . . . . . . . .

HALL, J.

{¶ 1} Springfield Township appeals the trial court's denial of summary judgment on

Greg Guenther's tort claims alleging that the Township's failure to maintain drainage tiles caused his basement to flood. The Township contends that as a political subdivision it is immune from liability for any damages. This Court agrees. Guenther did not present any evidence that simple maintenance would remedy the flooding problem. Instead, the evidence shows that the drainage system had become inadequate, the reconstruction of the ditch that the tiles empty into was inadequate and the remedy was reconstruction. The Township is immune from claims concerning this drainage system's reconstruction. Therefore, we will reverse.

## I.

{¶ 2} Greg Guenther and his family live in a house at 2566 South Burnett Road in Springfield Township, Clark County. Their property is on the east side of and adjacent to South Burnett Road, which runs north and south. On the west side of Burnett is a field, and behind Guenther's property, to the east, is another field. A natural swale cuts through the western field, crosses Guenther's property, travels north behind his property and that of a few of his neighbors, and cuts a path through the eastern field. The natural drainage of water from the field on the west to the field on the east is directly through Guenther's residential property.

{¶ 3} In the early 1970s, the owners of 2566 South Burnett Road (not the Guenthers) were having flooding problems and requested Springfield Township to help. In 1971, at the behest of the then property owners, the Township authorized the installation of two drainage culverts beginning on the west side of South Burnett Road, continuing under the road, with underground drainage tile traveling through what is now the Guenther property, one on the south side, the other on the north side (this pipe is actually under the north neighbor's property), and ending in an open ditch in the farm field behind the property. Although

apparently installed at the owners' requests, the Township did not obtain easements for the tile pipes or the ditch area.

{¶ 4} In 1990, Guenther purchased the property and moved in.

{¶ 5} On February 24, 2005, Jeffrey Briner, the Township's zoning inspector, received a letter from Guenther saying that for the past three years he has had problems with flooding. Guenther wrote that since he moved in the drainage ditch to the rear of his property had never been maintained. He said that, when it rained, water overflowed from the ditch into his backyard. Guenther wrote that standing water in the ditch caused mosquito problems that often prevented him from enjoying his property. Also, Guenther wrote, when it rains hard the drainage ditch backs up into the tiles, and, with a large volume of rain the north pipe backs up and water from a clean-out cover floods his front yard. The day he received the letter, Briner and John Hughel, the Township's road superintendent, drove out to inspect the area. That afternoon, Briner called Mark Niccolini, the ditch maintenance supervisor for the Clark County Engineer, to see if the ditch behind Guenther's property was part of the County's ditch-maintenance program. Niccolini said that it was not. Briner also spoke to Doug Stevens, a former road superintendent, about past problems in the area. The next day, Briner and Ron Lowe, a Township Trustee, stopped by Guenther's property to take a look at his backyard. On February 28, Briner sent Guenther a letter telling him that the Township would look at options to correct the problem.

{¶ 6} In March 2005, Briner met with someone from the Clark County Soil and Water Conservancy District. It suggested that grass strips be planted along the swale in the western field to control runoff from the field. Also suggested was a dry well or french drain. At the

end of March, Niccolini called Briner and told him that the existing drainage tiles should be adequate to handle the amount of water running down the swale. He suggested that the Township clean out the tiles and reconstruct the drainage ditch behind Guenther's property. In early April, Briner told Guenther that the road crew was going to try to clean out the tiles. Briner also gave Guenther some literature on grass strip erosion control.

{¶ 7} The Township Trustees approved the ditch reconstruction project later in 2005. There was considerable delay due largely to the eastern field owner's lack of permission, including delay in obtaining an easement, and the best that was accomplished was a right of entry. There was also delay because a neighbor was required to repair a septic system that was leaking into the ditch, and another neighbor's sump pump discharged water into the ditch. The project did not get underway until April 2008.

{¶ 8} In early June 2008, it rained hard. Approximately 4-5 inches of rain fell overnight causing heavy flooding throughout the Township and County. Guenther's basement flooded, and his affidavit states the water caused more than $20,000 in damage. On August 13, 2008, Guenther filed a complaint against the Township seeking to recover damages and seeking injunctive relief. The complaint contains a claim for negligence and a claim for trespass on the basis that the pipes under his property were without easement. In July 2010, the Township moved for summary judgment, arguing that Guenther's claims were barred by the statute of limitations and, alternatively, that it was entitled to political-subdivision immunity. A magistrate denied summary judgment, finding genuine issues of material fact existed concerning the statute of limitations and the Township's immunity, and the Township objected. On November 1, 2010, the trial court adopted the magistrate's decision.

**{¶ 9}** The Township appealed.

## II.

**{¶ 10}** The Township assigns two errors. It argues that the court erred by not granting summary judgment based on immunity. And the Township argues that the court erred by not granting summary judgment based on the statute of limitations.

**{¶ 11}** A court should grant summary judgment if it is shown "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co., Inc.* (1978), 54 Ohio St.2d 64, 66; see Civ.R. 56(C). The Ohio Supreme Court has admonished appellate court not to "avoid deciding difficult questions of immunity by pointing to the trial court's use of the language 'genuine issue of material fact.'" *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, at ¶20. "Upon de novo review," said the Court, "a court of appeals may find that the issues of fact cited by the trial court do not justify the denial of immunity." Id. at ¶20. Therefore if after de novo review of the law and the facts, "only questions of law remain, the court of appeals may resolve the appeal." Id. at ¶21. Moreover, governmental immunity is a question of law that is properly decided by the court. *Carpenter v. Scherer–Mountain Ins. Agency* (1999), 135 Ohio App.3d 316; *Conley v. Shearer*, 64 Ohio St.3d 284, 1992-Ohio-133.

## 1. Political-Subdivision Immunity

### A. Sewer System

{¶ 12} Generally, political subdivisions are immune from tort liability. R.C. 2744.02(A)(1).[1] But there are exceptions. One exception, pertinent here, exposes a political subdivision to liability for the negligent performance of a "proprietary" function. R.C. 2744.02(B)(2).[2] The functions of a political subdivision are classified, for immunity purposes, as either governmental or proprietary. R.C. 2744.02(A)(1). The statutory scheme specifically delineates functions relating to a "sewer system." Governmental functions related to sewer systems include "[t]he provision or nonprovision, planning or design, construction, or reconstruction of  * * * a sewer system," R.C. 2744.01(C)(2)(l), and related proprietary functions include "[t]he maintenance, destruction, operation, and upkeep of a sewer system," R.C. 2744.01(G)(2)(d). But the first question to resolve is whether the two pipes and the ditch constitute a "sewer system" at all. If not, then there is no other exception to the general immunity that could apply.

{¶ 13} There is no dispute in the facts that two pipes run through the yards into a ditch on the adjacent rear farmland. They were installed in 1971 because of drainage problems in the area. In his complaint, filed August 13, 2008, Guenther refers to the culvert-tiles-ditch as a "storm water drain" and a "drainage ditch." His answers to interrogatories, signed June  16, 2009 refer to the arrangement as "drainage tile or ditches," although at one point he does

---

[1]"[A] political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

[2]"[P]olitical subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions."

respond that he received an insurance payment of "$10,000.00 for sewer backup." Finally, in his affidavit dated August 18, 2010 filed opposing summary judgment, he refers to the water diversion as "storm sewer drain pipes" and a "storm sewer drain system" but he does not express any particular expertise for classifying it as a sewer system. Contrarily, the affidavit of Jeffrey Briner states: "There is no storm sewer system in the Burnett Road area." Furthermore, as is evident from the trespass allegations, the Township does not have easements to control the pipes. It does not own and does not have an easement for the ditch, and the reconstruction was delayed due to a lack of right of entry to redo the ditch.

{¶ 14} The question is not what the parties might call the drainage tiles and ditch but whether they qualify as a "sewer system" contemplated by the statute allowing liability for negligent maintenance. There is no definition of "sewer system" in the immunity statute. But, as an exception to the general immunity grant, we believe the phrase should be construed more narrowly than broadly. In *Engel v. Williams County*, Fulton App. No. F–07–027, 2008–Ohio–3852, a section of County Road 10 in Williams County was the site of frequent flooding. Next to the roadway was a ditch, and the county had installed drainage tiles to channel the water away from the roadway. Two deaths occurred as a result of a driver losing control of his vehicle in high water on the road. On review, the Sixth District Court of Appeals reasoned: "[County Engineer] Schelling explained that the ditch was designed to handle run-off water from the road surface by channeling it into the adjacent fields. The record is devoid of any reference to the drainage tiles as a sewer system or as part of such a system.* * * There is no evidence in the record that the tiles and drain pipes used to drain the water from the road surface at the site of the accident were ever part of a larger storm sewer system.

Therefore, because the ditch in question is not part of a sewer system, its maintenance is a governmental, not proprietary, function * * *." Id. ¶17.

{¶ 15} On Burnett Road, other than at the western terminus where the pipes were adjacent to the public roadway, the Township did not have easements and had no legal authority to enter upon the lands to maintain the pipes and the ditch. Moreover, the installation was at the localized request of the two complaining homeowners. There is no evidence that the pipes and ditch are part of a larger "system." We conclude that the two pipes and ditch are not a "sewer system" that exposes the Township to liability for negligent maintenance.

{¶ 16} We are aware that this court decided *Holbrook v. Brandenburg*, Clark App. No. 2007-CA-106, 2009-Ohio-2320, which may seem to be inconsistent. In *Holbrook*, a two-pipe culvert extended from Holbrook's property, under Victory Road, and joined into an open culvert on Brandenburg's property. Bethel Township allowed Brandenburg to dam the culvert pipes with a concrete enclosure that caused water to back up and flood the Holbrook home. Holbrook sued Brandenburg and the Township. The Township claimed immunity. This court determined that the Holbrooks had demonstrated an exception to immunity, specifically, allegedly negligent maintenance of a sewer system under R.C. §2744.02(B)(2). But there was absolutely no discussion, analysis or examination of whether those pipes and culverts were a "sewer system." Rather, the crux of the case appears to have been that the court found questions of material fact about whether the Township could re-establish immunity by demonstrating that the actions it took were a matter of judgment and discretion. The *Holbrook* opinion appears to have assumed that the culvert, pipes and concrete enclosure constituted a "sewer system." Thus, *Holbrook* is not dispositive of the issue. Furthermore, in this case,

there was no legal right to enter the land to maintain the pipes under Guenther's yard and the ditch in the farm field beyond. Needless to say, the facts and arguments in *Holbrook* are not before us.

### B. Maintenance or Reconstruction; Proprietary or Governmental

{¶ 17} Even if we were to assume that the Burnett Road pipes and ditch constituted a sewer system, we believe immunity still would apply. Planning, design, construction or reconstruction of a sewer system is shielded by immunity; maintenance or operation is not. As other courts have recognized, "[g]iven the overlapping nature of these definitions, '[d]etermining whether an allegation of negligence relates to the maintenance, operation, or upkeep of a sewer system or, instead, the design, construction, or reconstruction of a sewer system is not always a simple inquiry.'" *Ivory v. Austintown*, Mahoning App. No. 10 MA 106, 2011-Ohio-3171, at ¶14, quoting *Essman v. Portsmouth*, Scioto App. No. 09CA3325, 2010-Ohio-4837, at ¶32. To determine whether the negligent-proprietary-function exception to immunity applies, we must determine whether Guenther's claim concerns a proprietary function or a governmental function.

{¶ 18} The Township argues that Guenther's claim actually concerns a governmental, not proprietary, function because the flooding problem cannot be fixed with simple maintenance. Rather, argues the Township, the drainage system needs to be entirely redesigned and reconstructed. Ohio courts have used the problem's remedy to determine whether actions concerning a sewer system are governmental or proprietary. A complaint is properly characterized as a maintenance, operation, or upkeep issue when "remedying the sewer problem would involve little discretion but, instead, would be a matter of routine

maintenance, inspection, repair, removal of obstructions, or general repair of deterioration." *Essman*, at ¶32 (Citations omitted), quoted in *Austintown*, at ¶15. But the complaint presents a design or construction issue if "remedying a problem would require a [political subdivision] to, in essence, redesign or reconstruct the sewer system." *Essman*, at ¶32-33 (Citations omitted), quoted in *Austintown*, at ¶15.

{¶ 19} Guenther's complaint alleges that runoff water flowing down the swale in the field across South Burnett Road washes corn stalks from the field to the drainage tiles. According to one of Guenther's interrogatory answers, the drainage tiles become clogged with corn stalks, the runoff water backs up, the water level on the west side of the road rises, and eventually it becomes high enough that water crosses the road into his yard (and into his basement). This has been happening periodically, according to Guenther, since about 1995. Guenther says that the Township has tried to clean out the drainage tile but it continues to clog. According to another of his interrogatory answers, at a June 2008 Township Trustee meeting, Briner said that another drainage system higher up was not functioning, so the runoff water that normally flowed through that system is now flowing down the swale on the other side of the road. The amount of runoff water running toward Guenther's property, then, has increased.

{¶ 20} The system that the Township designed and installed in 1971 to alleviate the flooding on Guenther's property is apparently inadequate. A "fix" recommended by the County was completed in early 2008 with reconstruction of the ditch. Although he complains about flooding for years, the peak event resulting in the $20,000.00 flooding damage to Guenther's basement was just two months after reconstruction of the ditch. With the advent

of no-till farming, which Guenther refers to in the interrogatories, crop residue (like corn stalks) is not plowed or disked into the soil and remains in fields, allowing runoff water to wash it away, which exacerbates the flooding problem. The evidence reveals the Township has cleaned out the stalks several times, but the problem returns. Guenther believes that the solution is simply to clean out the drainage tiles, and his affidavit states that his flooding resulted from lack of maintenance. But his affidavit demonstrates no expertise to qualify him to render this opinion, and he has presented no other evidence that simple maintenance is a solution to, or would have prevented, the problem.[3]

---

[3] We note too that he has cited no statute that imposed on the Township a duty to maintain the drainage tiles. Guenther asserts that the Township has this duty, but he does not identify the basis of the duty. The Township nowhere disputes that it has this duty.

Under Ohio common law, a political subdivision has no duty to maintain a sewer structure on private property unless it benefits the public. *Probst v. Summit Cty.* (March 26, 1997), Summit App. No. 17810 (saying that a township has no duty to maintain a private drainage pipe), citing *Irwin v. Bedford* (Apr. 24, 1986), Cuyahoga App. No. 50178. Either the property that enjoys the benefits of the structure must be used for public purposes, *Bibbs v. Cinergy Corp.* (April 12, 2002), Hamilton App. No. C-010390 ("Ohio common law holds that, where a sewer structure is on private property, a political subdivision is not obligated to maintain it unless the property has been used for public purposes."), citing *Fatobene v. Warren* (May 3, 1996), Trumbull App. No. 95-T-5269 ("[A] city or county can be obligated to maintain a sewer structure on private property if that property has been 'dedicated' for public use."), citing *Beauchamp v. Hamilton Twp. Trustees* (May 5, 1994), Franklin App. No. 93APE09-1331, or the sewer structure itself must have some public purpose, *Fatobene* ("[A] city or county is not obligated to maintain a sewage structure on private property if there is no indication that the sewer structure was ever used for public purposes."), citing *Beauchamp*. If the structure is not used for public purposes but is for private use only, a political subdivision does not have a duty to maintain it. *Bibbs* ("If the line is not used for public purposes but is for private use, * * * a city is not obligated to maintain it."). In *Irwin,* supra, the court stated: "[A] city has no duty to maintain a private drainage system on private property which (a) it did not construct, (b) it did not appropriate or accept, and (c) was not part of a regularly running public watercourse." (citing *Caldwell v. Goldberg* (1975), 43 Ohio St.3d 48, at paragraph one of the syllabus).

We recognize that Springfield Township installed the culvert pipes and drain tile at issue. And, the case of *Doud v. Cincinnati* (1949), 152 Ohio St. 132, is often cited for

{¶ 21} Because reconstruction or redesign of what we have assumed for analysis is a "sewer system" is a governmental function, the negligent-proprietary-function exception does not apply here. The Township is immune from Guenther's tort claim.

{¶ 22} The first assignment of error is sustained.

## 2. Statute of Limitations

{¶ 23} The magistrate found genuine issues of material fact existed concerning whether the immunity statute's limitations period applied to either the negligence claim or the trespass claim. In the second assignment of error, the Township argues that both are so barred. We sua sponte question whether this Court has jurisdiction over this assignment of error.

{¶ 24} Ordinarily, an order denying summary judgment is not final and therefore may not be appealed. See *Celebrezze v. Netzley* (1990), 51 Ohio St.3d 89, 90. But "[a]n order that

---

the proposition that "[a] municipality is not obliged to construct or maintain sewers, but when it does construct or maintain them it becomes its duty to keep them in repair * * *." Id. at 137. But even there, the court specifically determined that the sewer in question, originally private, had been incorporated into the public sewer system and had taken on a public character. Here all the record evidence supports finding that the drainage pipes are merely private. The Township installed them at the request of the 1971 owners to alleviate flooding on their property. Guenther told Briner that in the 15 years he lived there the Township had never maintained the pipes. The swale that brings the water is not part of a public watercourse. There are no easements. We question whether the Township has a duty, other than a political one, to maintain the pipes and ditch.

We note too that Chapter 6131 of the Revised Code suggests that drainage problems are the County's responsibility. A recent opinion from the Attorney General, addressing the maintenance and repair of private underground drainage facilities in a township's unincorporated territory, found that Chapter 6131, which contains provisions governing the repair and maintenance of such facilities, "discloses that a township has no duty or responsibility under that chapter to repair or maintain [them]." 2010 Ohio Atty.Gen.Ops. No. 2010-027, at 2. "Furthermore," the opinion continues, "it is well established that a township has no express or implied authority to construct, repair, or maintain storm water drainage facilities to carry off surplus water except to the extent incidental to and necessary in the improvement of a township road." Id. (Citations omitted.). Indeed, it is the attorney general's opinion that "*a township's duty to clean and repair storm sewers is concomitant to its duty to maintain its road system.*" (Emphasis *sic.*) Id. at 3.

denies a political subdivision * * * the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order." R.C. 2744.02(C). Therefore, an order denying summary judgment based on a political subdivision's immunity defense is final and may be appealed. *Sullivan v. Anderson Twp.*, 122 Ohio St.3d 83, 2009-Ohio-1971, at the syllabus. The denial of summary judgment based on a statute of limitations, however, does not deny the political subdivision the benefit of immunity. *Essman v. Portsmouth*, Scioto App. No. 08CA3244, 2009-Ohio-3367, at ¶10; see *Carter v. Complete Gen. Constr. Co.*, Franklin App. No. 08AP-309, 2008-Ohio-6308, at ¶8 (saying that "[it] may not consider * * * any purported error arising from [] a denial [of summary judgment], with the exception of a grant or denial of statutory immunity for the city"). So an appeal from an order denying immunity "is limited to the review of alleged errors in the portion of the trial court's decision which denied the political subdivision the benefit of immunity." *Makowski v. Kohler*, Summit App. No. 25219, 2011-Ohio-2382, at ¶7 (saying that by concluding that claims were not barred by the statute of limitations, the trial court did not deny the benefit of immunity but denied the benefit of the statute of limitations).

{¶ 25} We therefore lack jurisdiction to consider the denial of summary judgment based on the Township's statute-of-limitations defense. See *Essman*, at ¶10 (concluding the same); *Makowski*, at ¶8 (same).

**3. Guenther's Motion for Attorneys' Fees**

{¶ 26} Guenther has moved this Court to award him reasonable attorneys' fees and costs, arguing that the Township's appeal is frivolous because its lack of immunity is clear. Based on the outcome of this appeal, the motion is denied.

## III.

{¶ 27} The trial court erred by adopting the magistrate's opinion and by failing to grant the Motion for Summary Judgment on the issue of governmental immunity. Subsequent to the trial court's adoption of the denial of the Motion for Summary Judgment on November 1, 2010, the magistrate issued a "Decision modifying the Magistrate's September 9, 2010 Decision Overruling Defendant's Motion for Summary Judgment" on November 8, 2010. In its brief, the Township states that it filed objections to that magistrate's decision. (Appellant's brief at 2.) Objections do not appear in our record. Nevertheless, the trial court had not addressed the magistrate's November 8, 2010 supplemental decision when the Township filed its Notice of Appeal on December 1, 2010. The issue of what, if anything, the trial court may do with the supplemental magistrate's decision may well be moot, but out of caution the judgment of the trial court is reversed and the case remanded for any further proceedings consistent with this opinion.

. . . . . . . . . . . . .

RICE, J., concurs.

FROELICH, J., concurs in judgment only.

(Hon. Cynthia Westcott Rice, Eleventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)

Copies mailed to:

Paul J. Kavanagh
Elizabeth J. Dunn
Jeffrey C. Turner

Dawn M. Frick
Hon. Richard J. O'Neill