CYNTHIA WESTCOTT RICE, P.J.
{¶ 1} Appellant, the city of Willowick, appeals the judgment of the Lake County Court of Common Pleas in favor of appellee, Kimberly Ragazzo, denying the city's motion for judgment on the pleadings on her negligence claim against the city. At issue is whether the court erred in finding the city was not entitled to political subdivision immunity. The city's appeal of a judgment in a related action, which asserted the same allegations against the city, but without class action allegations, is also pending before this court in Abramezyk v. Willowick , 11th Dist. Lake No. 2017-L-060, 2017 WL 6729682. For the reasons that follow, we affirm.
{¶ 2} On July 14, 2015, Ms. Ragazzo, who is a resident of Willowick, on behalf of herself and all others similarly situated, filed a class-action complaint against the city asserting, as pertinent to this appeal, a claim for negligence. On the same date, the complaint in Abramezyk was filed. Ms. Ragazzo states on appeal that Abramezyk was "filed out of concern that class action status could be denied in the instant Ragazzo proceeding." Ms. Ragazzo subsequently filed an amended complaint that *68 did not make any substantive changes to the original. The statement of facts that follows is derived from the allegations in Ms. Ragazzo's complaint and documents attached to the city's answer.
{¶ 3} The city owns, operates, and maintains a sanitary sewer system that provides sewer services to its residents. On July 20, 2013, the city's sewer system backed up into hundreds of homes in Willowick, including Ms. Ragazzo's home, causing them to be flooded with raw sewage, bacteria-tainted water, feces, urine, dirt, debris, and noxious odors.
{¶ 4} In the past several years prior to the July 20, 2013 sewer system backup, the city's residents experienced a number of such backups.
{¶ 5} In June 2010, about 200 city residents were affected by a sanitary sewer backup. On October 12, 2010, during a meeting of Willowick City Council, in which Council discussed the deteriorating condition of the city's sewer system, then-Mayor Richard Bonde said: "[T]he city has done all it can to cut back on the expenses to avoid passing costs onto residents. However, the city is now at the point where they cannot fix the sewers."
{¶ 6} At the same hearing, Bob Patton, Chairman of the Streets, Sidewalks, and Sewers Committee, said: "The city is in a bad place with making this decision, in light of the photographs the city engineer produced of the collapse[d] sewers, something needs to be done." Further, Mr. Patton said that the "city must do something" and that he was "very concerned with the fact that there are bricks falling and blocking the sewers." Council member, Mike Vanni, said: "the photographs of the bricks blocking the sewers is just more justification that the city needs to do something."
{¶ 7} Two months later, during a Council meeting on December 7, 2010, the city's Service Director, Joe Dominick, said: "[t]he 305th [Street] sewer line is in need of jetting," i.e., cleaning out. He said: "there are three troublesome areas that have 70%, 50%, and 20% restricted flow. The [sewer] lines have calcifications that cannot be easily cleaned out." To clarify, Mr. Dominick said: "there is one location that has a blockage of 70%" and "another spot [is] at 50% and 20% blockages." Mr. Dominick said this was the same blockage the city engineer discussed at the public meetings on October 12, 2010 and October 19, 2010. City Engineer Juday, who was also present at the December meeting, said this could be the reason for the sewer backup on Willowick Drive. At this meeting, Mayor Bonde said he "still has some concerns with the Bayridge [Boulevard] overflow that occurred this year."
{¶ 8} Ms. Ragazzo alleged in her complaint that, throughout 2011, city representatives continued to note concerns regarding the condition and maintenance of the city's sanitary sewer lines. She further alleged that the city never appropriately addressed these issues and that, despite these ongoing concerns, the city never took the necessary steps to repair the sewers through proper upkeep, maintenance, operation, and repair. Ms. Ragazzo alleged that, as a result of the city's failure to maintain and repair the sewer system, the system backed up into her home and the homes of others similarly situated on July 20, 2013.
{¶ 9} Ms. Ragazzo alleged the city had a duty to maintain and repair its sewer system, and that the city's breach of that duty resulted in damage to her home and to the homes of others similarly situated, for which the city is liable in negligence.
{¶ 10} The city filed an answer, denying the material allegations of the complaint *69 and asserting various affirmative defenses, including that the complaint was barred by political subdivision immunity, pursuant to R.C. Chapter 2744.
{¶ 11} Two weeks later, the city filed a motion for judgment on the pleadings pursuant to Civ.R. 12(C), arguing that Ms. Ragazzo's claim was barred by subdivision immunity. In her brief in opposition, Ms. Ragazzo argued that maintenance and repair of a sewer system is a "proprietary" function, which is an exception to the city's immunity.
{¶ 12} The trial court designated this case to be "complex litigation" due to, in part, "the extent of the discovery necessary to prepare the case for trial."
{¶ 13} The trial court entered a seven-page, highly-detailed judgment denying the city's motion. The trial court concluded:
{¶ 14} Upon review of the Complaint in this case, the Court finds that Plaintiff has alleged in the Amended Class Action Complaint * * * that the City has failed to maintain its sewer system. Maintenance of a sewer system is a "proprietary function" which satisfies one of the exceptions to immunity set forth in R.C. * * * 2744.02(B)(2). Viewing the pleadings in a light most favorable to the Plaintiff, the Court finds that it would be improper to grant judgment on the pleadings in favor of the Defendant at this time based upon statutory immunity.
{¶ 15} The city appeals the trial court's judgment, asserting the following for its sole assignment of error:
{¶ 16} "The trial court improperly denied defendant/appellant city of Willowick immunity under R.C. Chapter 2744 and judgment on the pleadings."
{¶ 17} This interlocutory appeal was filed pursuant to R.C. 2744.02(C), which provides that an order denying a political subdivision the benefit of an alleged immunity from liability is a final order. This court has held that the denial of a motion to dismiss based on sovereign immunity is immediately appealable. Am. Site Contrs., Inc. v. Willowick , 11th Dist. Lake No. 2005-L-088, 2005-Ohio-4768, 2005 WL 2211142, ¶ 2. Since the trial court's judgment denied the city's motion for judgment on the pleadings, thus denying the city immunity, the court's judgment was a final order and the instant appeal is properly before this court.
{¶ 18} "Because a Civ.R. 12(C) motion for judgment on the pleadings tests the legal basis for the claims asserted in a complaint, our standard of review is de novo." Orwell Nat. Gas Co. v. Fredon Corp. , 2015-Ohio-1212, 30 N.E.3d 977, ¶ 18 (11th Dist.), citing State ex rel. Midwest Pride IV, Inc. v. Pontious , 75 Ohio St.3d 565, 570, 664 N.E.2d 931 (1996). Further, whether a political subdivision is entitled to immunity is a question of law that we review de novo. See Cornelison v. Colosimo , 11th Dist. Trumbull No. 2009-T-0099, 2010-Ohio-2527, 2010 WL 2245614, ¶ 30.
{¶ 19} "In ruling on the motion [for judgment on the pleadings], a court is permitted to consider the complaint and the answer as well as any documents attached as exhibits to those pleadings." Orwell, supra . "In so doing, the court must construe the material allegations in the complaint, with all reasonable inferences drawn therefrom, as true and in favor of the non-moving party." Id. "A court granting the motion must find that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief." Id. " '[A] motion for judgment on the pleadings has been characterized as a belated Civ.R. 12(B)(6) motion for failure to state a claim upon which relief can be *70 granted.' " Orwell, supra , quoting Gawloski v. Miller Brewing Co. , 96 Ohio App.3d 160, 163, 644 N.E.2d 731 (9th Dist.1994).
{¶ 20} "Generally, the party asserting immunity as an affirmative defense has the burden of proving that defense by a preponderance of the evidence at trial." Hall v. Ft. Frye Loc. School Dist. Bd. Of Edn. , 111 Ohio App.3d 690, 694, 676 N.E.2d 1241 (4th Dist.1996). This court, in Frazier v. Kent , 11th Dist. Portage Nos. 2004-P-0077 and 2004-P-0096, 2005-Ohio-5413, 2005 WL 2542940, set forth the appropriate analysis to be applied upon the assertion of a defense based on political subdivision immunity, as follows:
{¶ 21} R.C. Chapter 2744 sets forth a three tiered analysis for determining a political subdivision's immunity from liability. Greene Cty. Agricultural Soc. v. Liming , 89 Ohio St.3d 551, 556 [733 N.E.2d 1141] (2000). First, R.C. 2744.02(A)(1) codifies the general rule of sovereign immunity, viz., that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." However, this general rule is limited by R.C. 2744.02(B), which sets forth five instances in which a political subdivision is not immune. Hence, the second tier of the analysis requires a court to determine whether any of the exceptions under R.C. 2744.02(B) apply. Finally, if a political subdivision is exposed to liability through the application of R.C. 2744.02(B), a court must consider whether the political subdivision could legitimately assert any of the defenses or immunities under R.C. 2744.03. See, e.g. , Greene Cty. Agricultural Soc. , supra , at 557 [733 N.E.2d 1141]. Frazier , supra , at ¶ 20.
{¶ 22} I. THE FIRST TIER: GENERAL SUBDIVISION IMMUNITY UNDER R.C. 2744.02(A)(1)
{¶ 23} Applying this analysis to the instant case, it is undisputed that the city of Willowick is a political subdivision pursuant to R.C. 2744.01(F). Thus, under the first tier of the analysis, the city is entitled to general immunity pursuant to R.C. 2744.02(A)(1).
{¶ 24} II. THE SECOND TIER: THE EXCEPTION TO SUBDIVISION IMMUNITY FOR THE NEGLIGENT PERFORMANCE OF A PROPRIETARY FUNCTION UNDER R.C. 2744.02(B)
{¶ 25} Under the second tier of the analysis, this court must determine whether any of the exceptions to immunity applies under R.C. 2744.02(B). Ms. Ragazzo argues her damages were caused by the city's failure to maintain its sewer system. She argues this failure amounts to negligence in the performance of a proprietary function, which, she contends, satisfies the exception to immunity in R.C. 2744.02(B)(2). That section provides:
{¶ 26} [P]olitical subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivision. (Emphasis added.)
{¶ 27} Government conduct is divided into governmental functions and proprietary functions under Ohio's Political Subdivision Tort Liability Law. Guenther v. Springfield Twp. Trustees , 2012-Ohio-203, 970 N.E.2d 1058, ¶ 12. With respect to sewer systems, "governmental functions" include "[t]he * * * planning or design, *71 construction, or reconstruction of a public improvement, including, but not limited to, a sewer system." R.C. 2744.01(C)(2)(l). In contrast, "proprietary functions" regarding sewer systems include "[t]he maintenance, * * * operation, and upkeep of a sewer system." R.C. 2744.01(G)(2)(d). Thus, "planning, design, construction, or reconstruction of a sewer system is shielded by immunity; maintenance or operation is not." Guenther , supra , at ¶ 17.
{¶ 28} In determining whether a complaint presents a maintenance issue (no immunity) or a construction issue (immunity), the Second District, in Guenther, supra , stated:
{¶ 29} A complaint is properly characterized as a maintenance, operation, or upkeep issue when "remedying the sewer problem would involve little discretion but, instead, would be a matter of routine maintenance, inspection, repair, removal of obstructions, or general repair of deterioration." Essman [v. Portsmouth , 4th Dist. Scioto No. 09CA3325, 2010-Ohio-4837, 2010 WL 3852247,] ¶ 32. But the complaint presents a design or construction issue if "remedying a problem would require a [political subdivision] to, in essence, redesign or reconstruct the sewer system." Essman at ¶ 32-33. Guenther , supra , at ¶ 18 ; quoted with approval by Coleman v. Portage Cty. Engineer , 133 Ohio St.3d 28, 2012-Ohio-3881, 975 N.E.2d 952, ¶ 30.
{¶ 30} Here, the complaint alleged that the city failed to maintain and repair its sewer system. Further, the city concedes the proprietary-function exception to immunity is arguably at issue here. However, the city contends that the complaint does not contain sufficient factual allegations to support Ms. Ragazzo's negligence claims or to deprive the city of immunity. We do not agree.
{¶ 31} In addressing Ohio's pleading requirements, this court, in McWreath v. Cortland Bank , 11th Dist. Trumbull No. 2010-T-0023, 2012-Ohio-3013, 2012 WL 2522933, ¶ 38, stated:
{¶ 32} "Because Ohio is a notice-pleading state, Ohio law does not ordinarily require a plaintiff to plead operative facts with particularity. * * * Rather, Civ.R. 8(A) requires only a short and plain statement of the claim that gives the defendant fair notice of the plaintiff's claim and the grounds upon which it is based. * * * Thus, a plaintiff is not required to plead the legal theory of the case at the pleading stage and need only give reasonable notice of the claim. * * * Outside of a few exceptions, * * * a complaint need not contain more than 'brief and sketchy allegations of fact to survive a motion to dismiss under the notice pleading rule.' * * *." (Internal citations omitted.) Ogle v. Ohio Power Co. , 180 Ohio App.3d 44, 2008-Ohio-7042, 903 N.E.2d 1284, ¶ 5 (4th Dist.).
{¶ 33} "When ruling on a motion to dismiss, 'a plaintiff is not required to prove his or her case at the pleading stage.' " Mohat v. Horvath , 11th Dist. Lake No. 2013-L-009, 2013-Ohio-4290, 2013 WL 5450296, ¶ 14, quoting York v. Ohio State Hwy. Patrol , 60 Ohio St.3d 143, 144-145, 573 N.E.2d 1063 (1991). "Rather, a plaintiff is only required to allege a set of facts, which, if proven, would plausibly allow for recovery." Id. , citing Howard v. Girard , 11th Dist. Trumbull No. 2010-T-0096, 2011-Ohio-2331, 2011 WL 1944196, ¶ 14. "The plausibility standard does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence in support of a claim." Id. "While the complaint does not need detailed factual allegations, it requires *72 more than mere conclusions or a recitation of the elements of the claim." Id.
{¶ 34} The city argues that Ms. Ragazzo's factual allegations are insufficient and the complaint must be dismissed because she failed to allege: (1) the specific cause of the 2010 sewer backup; (2) that she was affected by that backup; (3) whether the problems with the sewer system in 2010 had anything to do with the 2013 backup; (4) the specific sewer problem that affected her home in 2013; (5) the specific steps necessary to remedy the problem with the sewers; and (6) what work was not performed. Basically, the city argues that, unless the complaint made specific factual allegations regarding virtually every aspect of her claim, it must be dismissed.
{¶ 35} However, in making this argument, the city misconstrues-or ignores-Ms. Ragazzo's burden at the pleading stage. As noted above, in order to survive a motion for judgment on the pleadings, she was not required to meet a particularity or probability standard. Rather, she was simply required to allege enough facts to give the city notice of her claim and the grounds on which it was based. McWreath, supra. While the complaint requires more than mere legal conclusions, it does not need detailed or particularized factual allegations. Id.
{¶ 36} Contrary to the city's argument, Ms. Ragazzo alleged sufficient facts to support her claim and to defeat the city's immunity defense. Ms. Ragazzo alleged in her complaint that in June 2010, some 200 residents of the city were affected by the sewer backup. The complaint and Council's minutes (attached to the city's answer) provide facts regarding at least three different potential causes of the 2010 backup, i.e., calcification in the sewer lines, bricks falling and blocking the sewers, and collapsed sewers. The city engineer said the calcification blockage might have been the cause of the sewer backup on Willowick Drive. The mayor himself acknowledged the serious nature of the problems with the sewer system by saying that "the city is now at the point where they cannot fix the sewers." Further, the complaint alleged that, throughout 2011, city representatives continued to express concerns regarding the condition and maintenance of the city's sewer lines. Ms. Ragazzo alleged that, despite these ongoing concerns regarding the sewer system, the city failed to remedy the problems with the sewer system through proper upkeep, maintenance, operation, and repair. These facts support a reasonable inference that the sewer problems connected with the 2010 backup were not repaired by the time of the 2013 backup and were thus also related to that backup.
{¶ 37} In light of the obvious complexity of this case, as evidenced by the trial court's designation of this matter as "complex litigation," it is unrealistic to expect that, at the pleading stage, Ms. Ragazzo would be able to plead detailed facts regarding all the pleading omissions alleged by the city. These issues will presumably be addressed in discovery. For now, the city cannot reasonably deny that it is on notice of Ms. Ragazzo's claim and the grounds on which it is based. Nor can the city reasonably deny that Ms. Ragazzo has alleged a set of facts, which, if proven, would plausibly allow for recovery.
{¶ 38} The city attempts to minimize the significance of the facts alleged by Ms. Ragazzo in the complaint. First, the city argues she took the mayor's comments about the city not being able to fix the sewers out of context because he made them while discussing repairing the sewers without raising sewer rates. However, construing the mayor's comments in a light most favorable to Ms. Ragazzo, these comments acknowledge that the city was on *73 notice of the deteriorating condition of its sewer system and that the city allowed these problems to continue to the point where it could not fix the sewers.
{¶ 39} Further, the city's argument that it hired a contractor to clean out the calcification in the E. 305th Street sewer line does not mean the city repaired the calcification problem at that location or at any other area of the city where calcification had created blockages or any of the other problems plaguing the sewer system. Notably, the city does not reference anything in the record showing the city repaired any of the problems with the sewer system prior to the 2013 backup.
{¶ 40} Finally, the city argues there are no facts connecting the sewer system problems identified in 2010 with the 2013 backup. However, the city ignores Ms. Ragazzo's allegations that city officials remained concerned about the condition and maintenance of the sewer lines "[t]hroughout 2011" and that, despite these ongoing concerns, the city failed to repair the sewers, resulting in the 2013 backup.
{¶ 41} III. THE THIRD TIER: THE RESTORATION OF DISCRETIONARY IMMUNITY UNDER R.C. 2744.03(A)(5)
{¶ 42} Next, under the third tier of the immunity analysis, the city argues that, even if the proprietary-function exception to immunity in R.C. 2744.02(B)(2) applies, Ms. Ragazzo failed to allege facts that would defeat the reinstatement of discretionary immunity pursuant to R.C. 2744.03(A)(5). That section provides:
{¶ 43} The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.
{¶ 44} However, the city does not argue, let alone show, that it exercised any discretion in the maintenance and repair of its sewer system, thus defeating the restoration of immunity contemplated in R.C. 2744.03(A).
{¶ 45} Ohio Appellate Districts have repeatedly held that the decision to provide maintenance and repair to a sewer system does not involve the exercise of discretion that would provide for the restoration of immunity under R.C. 2744.03(A)(5). In Williams v. Glouster , 4th Dist. Athens No. 10CA58, 2012-Ohio-1283, 2012 WL 1029470, the Fourth District "rejected [the appellant-village's] contention that its duty to maintain the [sewer] system constituted the type of discretionary decision * * * contemplated under R.C. 2744.03(A)(5) which would re-establish its immunity." Williams at ¶ 35. The Fourth District stated:
{¶ 46} [I]f it is proven that [a]ppellant negligently maintained its * * * sewer system, the maintenance of which is a proprietary function, because that function is mandatory and did not involve the exercise of judgment or discretion, [a]ppellant's immunity from liability would not be re-instated under R.C. 2744.03(A)(5). As such, we need not reach the question of whether [a]ppellant's actions were exercised with malicious purpose, in bad faith, or in a wanton or reckless manner, as set forth in R.C. 2744.03(A)(5). Williams at ¶ 36.
{¶ 47} Further, in Nelson v. Cleveland , 8th Dist. Cuyahoga No. 98548, 2013-Ohio-493, 2013 WL 588718, another case involving a city's alleged negligent maintenance of its sewer system, the court rejected the *74 city's argument that it was entitled to discretionary immunity under R.C. 2744.03(A)(5). Nelson at ¶ 30. The Eighth District, in citing Williams, supra , and other cases stated:
{¶ 48} Decisions involving the proper maintenance of the sewer * * * system is a proprietary act, which is mandatory and not discretionary. These decisions do not involve a high degree of discretion. Rather, they involve routine inspection and maintenance. Therefore, the defense outlined in R.C. 2744.03(A)(5) is not available to the City. Nelson, supra .
{¶ 49} We find the reasoning in Williams and Nelson to be persuasive and applicable here. Since this case involves the maintenance and repair of sewers, which, per R.C. 2744.01(G)(2)(d), is a proprietary function, R.C. 2744.03(A)(5) does not apply to restore immunity to the city.
{¶ 50} We therefore hold the trial court did not err in denying the city's motion for judgment on the pleadings and in finding that the city was not entitled to political subdivision immunity on Ms. Ragazzo's negligence claim.
{¶ 51} For the reasons stated in this opinion, the assignment of error is overruled. It is the order and judgment of this court that the judgment of the Lake County Court of Common Pleas is affirmed.
THOMAS R. WRIGHT, J., concurs,
DIANE V. GRENDELL, J., concurs in judgment only.