DECISION AND JUDGMENT
{¶ 1} This is an appeal from a judgment of the Fulton County Court of Common Pleas that granted summary judgment in favor of appellees Williams County, Ohio, and North Western Electric Cooperative, Inc., in appellants' action for damages following a *Page 2 
tragic and fatal automobile accident on County Road 10 in Williams County. For the following reasons, the judgment of the trial court is affirmed.
 {¶ 2} The undisputed facts relevant to the issues raised on appeal are as follows. On June 1, 2004, 16-year-old Brent Morgan was driving on County Road 10 (C.R. 10) in Williams County when he encountered a stretch of the roadway covered with approximately two to five inches of standing water. As Morgan drove through the water at an unknown speed, he lost control of the car, crossed the center line and left the roadway. The car struck a utility pole owned by appellee North Western Electric Cooperative, Inc. ("North Western") located approximately nine and one-half feet off the edge of the road. Seventeen-year-old Roger Engel, a front-seat passenger, died approximately two hours after the accident; Morgan died 19 days later. The area of road where the accident occurred was in a protected wetlands area and had been saturated by heavy rain which fell several days prior to the accident. The roadway was straight; at the time of the accident, it was dry with the exception of the standing water, which crossed the entire width of the road. The area of roadway covered with water was approximately 102 feet long at the edges and 52 feet in the middle; the water was approximately two inches deep at the crown and four and one-half inches deep at either edge of the road.
 {¶ 3} For many years, local residents and county authorities had known that the portion of C.R. 10 where the accident occurred had serious flooding problems after heavy rainfalls and in the springtime. Prior to the accident, the county had tried repeatedly to *Page 3 
reduce the frequency and amount of flooding by, among other things, installing drainage tiles leading away from the roadway. The flooding conditions were not alleviated completely, however. The county placed hinged "high water" signs in the area, which were unhinged and displayed whenever the road flooded.
 {¶ 4} On the day of the accident, a "high water" sign was displayed approximately 350 feet north of the point where the water began to cover the roadway. It is undisputed that the signs were not obstructed from view and were visible to motorists traveling south on C.R. 10, as Morgan was. It is also not disputed that there were no obstructions of motorists' view of the standing water once they reached the crest of a hill that was approximately 264 feet from the area where the water crossed the roadway.
 {¶ 5} The estates of Brent Morgan and Roger Engel filed separate complaints in 2005, naming Williams County as a defendant. The plaintiffs alleged that the county was liable for the deaths of Morgan and Engel because Morgan lost control of his vehicle when it hit water that had collected on the roadway due to the county's negligence. In October 2005, the two cases were consolidated and in January 2006, the case was transferred to the Fulton County Court of Common Pleas. On March 28, 2006, plaintiffs filed an amended complaint naming both Williams County and North Western Electric Cooperative, Inc. as defendants.
 {¶ 6} After extensive discovery, both defendants filed motions for summary judgment. Williams County asserted it was immune from liability by operation of *Page 4 
R.C. 2744.02, the Political Subdivision Tort Liability Act; that it fulfilled its statutory duty to keep the road free from obstructions by posting "high water" signs; and that Morgan's driving in excess of the speed appropriate for conditions was the sole proximate cause of the accident. North Western asserted that it was not liable under Ohio law because the utility pole was located on private property. Further, North Western asserted that it did not breach any duty of care owed to plaintiffs' decedents because Morgan's driving, not the placement of the utility pole, was the sole proximate cause of the accident.
 {¶ 7} In response, appellants claimed that the county's failure to adequately maintain the ditch and roadway, after having notice of long-standing problems in that area, constituted negligence. Appellants further claimed that the county acquiesced in the improper placement of the utility poles by North Western and that the placement of the "high water" signs was not adequate considering the nature and degree of the danger posed. Finally, appellants argued that Morgan's negligence, if any, was "comparative" and that his share of the totality of negligence was a question of fact for a jury.
 {¶ 8} On October 10, 2007, the trial court granted summary judgment in favor of both defendants. The trial court found that Williams County was immune from liability under R.C. Chapter 2744 and had not breached a duty owed to plaintiffs' decedents. The court further found that North Western had placed its utility pole on private property and had not breached a duty owed plaintiffs' decedents or contributed to the proximate cause of the accident. *Page 5 
 {¶ 9} Appellants set forth the following assignments of error:
 {¶ 10} "1. The trial court erred by granting summary judgment in favor of Appellee Williams County by finding that Williams County was immune from suit pursuant to R.C. 2744.01 et seq.
 {¶ 11} "2. The trial court erred by granting summary judgment in favor of Appellee Williams County by finding the use of signs to warn of the accumulation of water immunized Appellee Williams County from suit.
 {¶ 12} "3. The trial court erred by granting summary judgment in favor of Appellee NWEC based upon a finding that NWEC was immune from suit."
 {¶ 13} An appellate court must employ a de novo standard of review of the trial court's summary judgment decision, applying the same standard used by the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ. R. 56(C).
 {¶ 14} Appellants' first two assignments of error relate specifically to appellee Williams County and assert that the trial court erred by granting summary judgment in the county's favor. *Page 6 
 {¶ 15} R.C. 2744.02(A)(1) confers sovereign immunity from civil liability upon political subdivisions "for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(B) sets forth five exceptions to the immunity granted to political subdivisions. Finally, R.C. 2744.03(A) sets forth several defenses that a political subdivision may assert if R.C. 2744.02(B) imposes liability.
 {¶ 16} As to Williams County, appellants assert in their first assignment of error that the county negligently failed to maintain the ditch along C.R. 10 where the water accumulated and the accident occurred. Appellants argue that exceptions to immunity set forth in R.C. 2744.02(B)(2) and (B)(3) apply in this case. First, appellants assert that maintenance of the ditch adjacent to C.R. 10 was in effect maintenance of a "sewer system," which is described as a proprietary function in R.C. 2744.02(G)(2)(d). Appellants argue that the exception to immunity set forth in R.C. 2744.02(B)(2), which holds political subdivisions liable for the negligent performance of proprietary functions by its employees, therefore applies in this case. Second, appellants assert that the county is prevented from claiming immunity under the exception set forth in R.C. 744.02(B)(3), which imposes liability on a political subdivision for injury or death caused by the negligent failure to remove obstructions from public roads. Appellants assert that the water on the roadway constituted an obstruction. *Page 7 
 {¶ 17} There is no support in the record for appellant's claim that the ditch adjacent to the accident site is part of the county's sewer system and that its maintenance is therefore a proprietary function. Testimony adduced through depositions clearly described actions taken at the site with the aim of controlling flooding. Walter Schelling, Williams County engineer at the time of the accident and for the previous 16 years, testified at length about "flood control measures" taken for many years in the area immediately surrounding the accident site. Schelling repeatedly referred to the area adjacent to the roadway as a "drainage ditch." An application completed by Schelling and submitted in 1992 to the Army Corps of Engineers requesting replacement of the existing tile outlet at the site stated that the purpose for the request was drainage "to eliminate flooding." Schelling explained that the ditch was designed to handle run-off water from the road surface by channeling it into the adjacent fields. The record is devoid of any reference to the drainage tiles as a sewer system or as part of such a system. While maintenance of a sewer system is a proprietary function, flood control measures are defined in R.C. 2744.01(C)(2)(r) as a governmental function. There is no evidence in the record that the tiles and drain pipes used to drain the water from the road surface at the site of the accident were ever part of a larger storm sewer system. Therefore, because the ditch in question is not part of a sewer system, its maintenance is a governmental, not proprietary, function and the exception to immunity set forth in R.C. 2744.02(B)(2) does not apply. *Page 8 
 {¶ 18} Appellants next argue that Williams County is prevented from claiming immunity because it negligently failed to remove an obstruction — that is, the accumulated rainwater — from the roadway. R.C. 2744.02(B)(3) provides that a political subdivision is liable for injury, death or loss to person or property caused by the negligent failure to remove an obstruction from a public road. Appellants correctly note, however, that "obstruction" is not defined in the statute.
 {¶ 19} The Supreme Court of Ohio recently considered the issue of whether an accumulation of ice on a roadway was an "obstruction" within the meaning of R.C. 2744.02(B)(3) and concluded that it was not.Howard v. Miami Twp. Fire Div., Slip Opinion No. 2008-Ohio-2792. InHoward, the Ohio Supreme Court reversed a ruling by the Second District Court of Appeals and reinstated a trial court summary judgment holding that the township could not be sued for damages by the family of a teenager who was killed in a traffic accident in which frozen runoff from a firefighter training exercise may have been a factor. The trial court had ruled that the water and ice at issue in the case did not constitute an "obstruction" under the usual and ordinary meaning of that term.
 {¶ 20} In Howard, the supreme court wrote that the case hinged on the proper interpretation of R.C. 2744.02(B)(3) as amended in part in 2003, which allows civil claims against a subdivision for "negligent failure to remove obstructions from public *Page 9 
roads * * * ." The court wrote that an understanding of the statutory history of the subsection was critical to its application:
 {¶ 21} "[W]e believe that the General Assembly purposely replaced the phrase `free from nuisance' with `other negligent failure to remove obstructions.' To find otherwise is to conclude that the legislature's action in amending the statute was a superfluous act.
 {¶ 22} "We are persuaded that the legislature's action in amending R.C. 2744.02(B)(3) was not whimsy, but a deliberate effort to limit political subdivisions' liability for injuries and deaths on their roadways." Howard at ¶ 25-26.[1]
 {¶ 23} Howard further explained at ¶ 29: "[W]e discern a legislative intent to limit political-subdivision liability for roadway injuries and deaths. The General Assembly, in furtherance of its goal, used the word `obstructions' in a deliberate effort to impose a condition more demanding than a showing of a `nuisance' in order for a plaintiff to establish an exception to immunity."
 {¶ 24} The supreme court rejected as too broad the appeals court's definition of "obstruction" as "any object that has the potential of interfering with the safe passage of motorists" and reversed the appeals court's holding that the "icy mixture" on the road was an obstruction which the political subdivision had a duty of care to remove. *Page 10 
 {¶ 25} "We conclude that for purposes of R.C. 2744.02(B)(3), an `obstruction' must be an obstacle that blocks or clogs the roadway and not merely a thing or condition that hinders or impedes the use of the roadway or that may have the potential to do so." Id. at ¶ 30.
 {¶ 26} We acknowledge that in the case before us the substance on the roadway was an accumulation of water and not ice. However, the decision in Howard clearly is not limited to circumstances involving only ice. As in Howard, we find that the water on C.R. 10 was not blocking or clogging the roadway and was therefore not an "obstruction" as contemplated by R.C. 2744.02(B)(3).
 {¶ 27} Based on the foregoing, we find that appellants' first assignment of error is not well-taken.
 {¶ 28} In their second assignment of error, appellants assert that the trial court erred by finding that the use of the warning signs was a discretionary act which provided Williams County with immunity pursuant to R.C. 2744.03(A)(3) and (A)(5). The trial court found that there was no evidence of willful or reckless conduct by any county authority in the exercise of that discretion. Appellants assert that the county took a two-prong approach to the flooding problem and that one of the prongs — maintenance of the drainage ditch — was not done in a reasonably prudent manner. They argue that since the "drainage prong" was not performed properly and, therefore, did not provide immunity, *Page 11 
"the signs alone cannot provide immunity because the signs are only half of the duty undertaken by Appellee Williams County."
 {¶ 29} Appellants are not arguing that there was a problem related to the high water signs at the accident scene. They do not dispute that the signs were displayed on the day of the accident. In fact, two of the troopers who investigated the accident immediately after it happened testified they observed the signs "unhinged" and visible. Trooper S.D. Cook testified at deposition that there was nothing that would have obstructed a driver's ability to see the high water sign when traveling southbound as Morgan was. Trooper Chad Durfey testified that immediately upon arriving at the scene to investigate, he noted that the signs were posted. Durfey believed the sign would have provided adequate time for a "proper response" once a driver saw it.
 {¶ 30} Appellants essentially interweave the issue of the signs under this assignment of error with the argument that the water on the roadway was an obstruction that the county negligently failed to remove. This court has already found that the water did not constitute an obstruction. This argument has no merit, and appellants' second assignment of error is not well-taken.
 {¶ 31} In their third assignment of error, appellants assert that the utility pole was too close to the roadway. The width of the road where the accident occurred is 60 feet and the pole which the car hit is approximately 21 feet from the center line. It is undisputed that the car crossed the center line and the oncoming lane before striking the *Page 12 
utility pole and coming to a stop. Appellants essentially argue that the pole was placed too close to the roadway.
 {¶ 32} The question of the circumstances under which a utility company may be held liable when a driver hits one of its poles was addressed in the May 7, 2008, decision of the Ohio Supreme Court in Turner v. OhioBell Tel. Co., Slip Opinion 2008-Ohio-2010. In Turner, a driver went off the road on a foggy night and struck a utility pole located in a grassy area two feet five inches from the berm; the passenger was killed. The decedent's estate filed suit against the utility company, alleging, inter alia, that the utility was negligent in placing, maintaining and continuing to utilize the pole in such close proximity to the traveled portion of the road. The trial court found that the pole did not constitute an obstruction dangerous to anyone properly using the road. On appeal, the Eighth District Court of Appeals reversed, finding that "liability may be imposed where the placement of a pole in close proximity to the edge of a roadway constitutes a foreseeable and unreasonable risk of harm to users of the roadway." Turner v. Ohio BellTel. Co., 8th Dist. No. 87541, 2006-Ohio-6168, ¶ 17. Turner was accepted by the Ohio Supreme Court as being in conflict with other appellate cases. In its recently-released decision, the supreme court held that "when a vehicle collides with a utility pole located off the improved portion of the roadway but within the right-of-way, a public utility is not liable, as a matter of law, if the utility has obtained any necessary permission to install the *Page 13 
pole and the pole does not interfere with the usual and ordinary course of travel." 2008-Ohio-2010, ¶ 21.
 {¶ 33} Appellants first argue that the utility pole was improperly placed in the C.R. 10 right-of-way. However, the supreme court noted inTurner that public utility companies have enjoyed at least a qualified right to place utility poles within the right-of-way of public roads since 1847. Id. at ¶ 17. Further, appellants acknowledge that North Western was given authority to place poles along C.R. 10 by way of resolutions of the Williams County Commissioners and the Superior Township Board of Trustees.
 {¶ 34} As to interference with the usual and ordinary course of travel, there is no evidence in the case before us that the utility pole interfered with the ordinarily traveled portion of C.R. 10. The pole is not located on a traveled and improved portion of the road and does not pose a danger to anyone properly using the roadway. It can hardly be disputed that anyone traveling on the paved portion of C.R. 10 would not come into contact with the utility pole, which was nine feet from the opposite edge of the road. Accordingly, we find that North Western is not liable for its placement of the utility pole which Morgan's car struck. Appellants' third assignment of error is not well-taken.
 {¶ 35} On consideration whereof, this court finds that no genuine issues of material fact exist and the trial court did not err by granting summary judgment in favor of appellees. We therefore find that substantial justice was done the parties complaining and the judgment of the Fulton County Court of Common Pleas is affirmed. Appellants *Page 14 
are ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Fulton County.
JUDGMENT AFFIRMED.
Mark L. Pietrykowski, P.J., Arlene Singer, J., Thomas J. Osowik, J., CONCUR.
[1] Howard notes that its conclusion is contrary to this court's decision in Floering v. Roller, 6th Dist. No. WD-02-076, 2003-Ohio-5679, ¶ 27, interpreting the current version of R.C. 2744.02(B)(3) as imposing the same duty of care on political subdivisions as it did when the statute's language included "free from nuisance." *Page 1