[Cite as *Schlegel v. Summit Cty.*, 2021-Ohio-3451.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

ROBERTA SCHLEGEL

    Appellee

    v.

SUMMIT COUNTY

    Appellant

C.A. No.    29804

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2018-10-4138

DECISION AND JOURNAL ENTRY

Dated: September 30, 2021

CALLAHAN, Judge.

{¶1} Appellant, Summit County, appeals the judgment of the Summit County Court of Common Pleas denying it the benefit of immunity as to the negligence claim asserted by Roberta Schlegel. Based upon the record before us and for the reasons set forth below, this Court reverses.

I.

{¶2} Since 1992, Ms. Schlegel has resided at 472 Meadowview Drive in Sagamore Hills, which is located at the southeast corner of the intersection of Boyden Road and Meadowview Drive. This is a T-intersection, with Boyden Road running north/south and Meadowview Drive running east/west. A drainage ditch runs along the east side of Boyden Road. At the intersection of Boyden Road and Meadowview Drive there are two metal culverts: one culvert runs perpendicular underneath each road. The Boyden Road culvert is on the north side of the intersection and has catch basins on both sides of the culvert. These culverts provide

drainage runoff from Meadowview Drive and houses on the east side of Boyden Road, including Ms. Schlegel's home.

{¶3} On April 1, 2016, Summit County ("the County") inspected the culverts at the intersection of Boyden Road and Meadowview Drive and found that they were both rusted with large holes. Based upon the deteriorating condition of the culverts, the catch basins, and a manhole cover, and the results of a drainage analysis for the surrounding area, the County determined that the culverts were deficient and needed to be replaced with larger pipes. In December 2016, the County prepared preliminary plans for the reconstruction of the culverts, and the plans were finalized in the first quarter of 2017. The County received approval for the contract to replace the culverts on May 16, 2017.

{¶4} In April 2017, there were heavy rains in the area. Sometime prior to May 21, 2017, a sinkhole formed in Boyden Road near the northwest corner of Mr. Schlegel's property and close to the southeast corner of the intersection with Meadowview Drive. The County placed an orange construction barrel on the collapsed portion of Boyden Road.

{¶5} On May 21 and 25, 2017, Ms. Schlegel's basement flooded. Ms. Schlegel called the County on May 26, 2017 to report that the culvert under Boyden Road[1] was obstructed due to the sinkhole in Boyden Road. That same day the County cleaned the debris from the culvert and water flowed through the culvert. Also, the County placed a steel plate over the sinkhole along with a caution cone. On May 28, 2017, Ms. Schlegel's basement flooded again. During June

---

[1] The parties identify the collapsed and blocked culvert differently. Ms. Schlegel refers to it as the culvert under Boyden Road while the County refers to it as the culvert under Meadowview Drive. Despite the difference in the parties' identification of the culvert, they appear to agree it is the same culvert. To avoid confusion we will not use either designation, and instead will refer to it as "the culvert."

2017, the County did some repairs to the culvert and Boyden Road and both culverts were replaced in July 2017.

{¶6} Ms. Schlegel filed a complaint against the County alleging that it was negligent in two ways: in the upkeep of the roadway and in the performance of a proprietary function. First, Ms. Schlegel alleged that the sinkhole and culvert collapse occurred due to the County's failure to maintain the roadway. Additionally, Ms. Schlegel alleged that the County was negligent in its attempt to temporarily repair and block the sinkhole and collapsed culvert by placing a metal plate and caution cone over the sinkhole. Ms. Schlegel asserted that both of these failures by the County in maintaining the roadway "made it so that water upon and along Boyden Road could not properly flow or filtrate," and caused her basement to flood.

{¶7} Ms. Schlegel also claimed that the County was negligent in providing a proprietary service, namely the maintenance of a sewer system. Ms. Schlegel alleged that the ditches and culverts were a sanitary sewer system. She asserted that the flooding in her basement was caused by the water in the Boyden Road ditch not being able to "flow or filtrate through the collapsed culvert[.]"

{¶8} The County moved for summary judgment, arguing that it was immune from Ms. Schlegel's negligence claims because the ditch and the culverts are not a sewer system and, thus did not constitute a proprietary function. Even if the culverts were a sewer system, the County argued, Ms. Schlegel's claims related to a governmental function as opposed to a proprietary function. Specifically, the County argued that Ms. Schlegel's allegations related to the design and reconstruction of the culverts as opposed to the maintenance and operation of a sewer system. The County also argued that the roadway maintenance exception did not apply as Ms. Schlegel's damages did not occur while traveling on the roadway. The County further argued

that even if an exception to immunity existed, immunity was restored pursuant to R.C. 2744.03(A)(5) because the County's handling of the culvert involved discretionary decisions. Finally, the County argued that Ms. Schlegel's negligence in using a substandard drainage system was the cause of the flooding in her basement.

{¶9}    Ms. Schlegel filed a brief in opposition, which was followed by a reply from the County and a sur-reply from Ms. Schlegel.  The trial court denied in part the County's motion for summary judgment, finding that there were genuine issues of material fact regarding: 1) whether an exception to immunity does not apply because the ditch, the culverts and the catch basins are not a sewer system; 2) whether the County was negligent in clearing the clogged culvert; 3) whether the sewer backup was due to the County's design and could not be resolved with maintenance; 4) whether the sewer backup was a result of the County's discretion and exercise of judgment in its use of personnel and resources to update the culverts; and 5) whether the design of Ms. Schlegel's drainage system was the cause of her basement flooding.  The trial court also granted in part the County's motion for summary judgment on the basis that the negligent roadway maintenance exception to immunity did not apply in this matter.

{¶10}  The County timely appealed the portion of the judgment denying it the benefit of immunity, raising three assignments of error.[2]

II.

## ASSIGNMENT OF ERROR NO. 1

THE TRIAL COURT ERRED BY NOT RULING AS A MATTER OF LAW THAT THE CULVERTS AT ISSUE WERE NOT A "SEWER SYSTEM" AS CONTEMPLATED UNDER R[.]C[.] 2744.01(G)(2)(D).

---

[2] Ms. Schlegel filed a cross-appeal to the portion of the trial court's order granting summary judgment to the County on the basis that the negligent roadway maintenance exception to immunity in R.C. 2744.02(B)(3) does not apply.  Prior to the briefs being filed in this appeal, this Court dismissed Ms. Schlegel's cross-appeal for lack of jurisdiction.

{¶11} In its first assignment of error, the County argues that the trial court erred when it denied the County's motion for summary judgment seeking immunity on the basis that there was a genuine issue of material fact regarding whether the ditch and the culverts are a sewer system. We agree.

{¶12} The denial of a motion for summary judgment is not ordinarily a final, appealable order. *Shepard v. Akron*, 9th Dist. Summit No. 26266, 2012-Ohio-4695, ¶ 8. The Ohio Supreme Court, however, has held that "[w]hen a trial court denies a motion in which a political subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and is therefore a final, appealable order pursuant to R.C. 2744.02(C)." *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, syllabus.

{¶13} Pursuant to Civ.R. 56(C), summary judgment is appropriate when: (1) no genuine issue as to any material fact exists; (2) the party moving for summary judgment is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can only reach one conclusion, and that conclusion is adverse to the nonmoving party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). To succeed on a motion for summary judgment, the moving party bears the initial burden of demonstrating the absence of genuine issues of material fact concerning the essential elements of the nonmoving party's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). *Id.* at 292-293. Once the moving party satisfies this burden, the nonmoving party has a "reciprocal burden" to "'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 293, quoting Civ.R. 56(E).

{¶14} This Court reviews de novo an order denying a political subdivision's motion for summary judgment seeking immunity. *Hubbell* at ¶ 21. If this review reveals that "only questions of law remain, the court of appeals may resolve the appeal." *Id.* However, "[i]f a genuine issue of material fact remains, the court of appeals can remand the case to the trial court for further development of the facts necessary to resolve the immunity issue." *Id.*

{¶15} R.C. Chapter 2744, the Political Subdivision Tort Liability Act, governs "when political subdivisions, their departments and agencies, and their employees are immune from liability for their actions." *Lambert v. Clancy, Hamilton Cty. Clerk of Courts*, 125 Ohio St.3d 231, 2010-Ohio-1483, ¶ 8. Pursuant to R.C. Chapter 2744, a court engages in a three-tiered analysis to determine whether a political subdivision is immune from liability in a tort action. *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, ¶ 13.

{¶16} "The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function." *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, ¶ 7. *See Smith* at ¶ 13, quoting R.C. 2744.02(A)(1). R.C. 2744.02(A)(1) provides in part that "[e]xcept as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Because political subdivision immunity is not absolute, the second tier of the immunity analysis requires a determination regarding whether any of the five exceptions to immunity set forth in R.C. 2744.02(B) apply to hold the political subdivision liable for damages. *Smith* at ¶ 14. *See* R.C. 2744.02(A)(1); *Cater v. Cleveland*, 83 Ohio St.3d 24, 28 (1998), *abrogated on other grounds, M.H. v. Cuyahoga Falls,* 134 Ohio St.3d 65, 2012-Ohio-5336, ¶ 9-

10. If any of the exceptions to immunity are applicable, then the third tier of the analysis assesses whether immunity can be reinstated based upon any of the defenses to liability enumerated in R.C. 2744.03. *Smith* at ¶ 15.

{¶17} Initially we note that in footnote 2 of her appellee brief, Ms. Schlegel argues that the trial court erred in determining that the roadway maintenance immunity exception in R.C. 2744.02(B)(3) did not apply in this case and in granting the County summary judgment as to that immunity exception. The requirements for appellate briefs set forth in App.R. (16)(A) apply to both appellants and appellees. *See* App.R. 16(A) and (B). Because an argument presented in a footnote does not comply with App.R. 16(A), we decline to address it. *See* App.R. 16(A); *Maynor v. Ewings*, 8th Dist. Cuyahoga No. 83248, 2004-Ohio-5033, ¶ 16, fn. 1. *See also White v. Moody*, 51 Ohio App.3d 16, 23 (10th Dist.1988). Even if we were to address the argument, we have consistently held that "[o]ur review is limited to the alleged errors in the portion of the trial court's decision which *denied* the political subdivision the benefit of immunity; and this Court lacks jurisdiction to address any other interlocutory rulings the trial court made." (Emphasis added.) *Carswell v. Akron*, 9th Dist. Summit No. 29321, 2019-Ohio-4444, ¶ 8, citing *Owens v. Haynes*, 9th Dist. Summit No. 27027, 2014-Ohio-1503, ¶ 8, quoting *Makowski v. Kohler*, 9th Dist. Summit No. 25219, 2011-Ohio-2382, ¶ 7. *Compare Jones v. Wheelersburg Loc. School Dist.*, 4th Dist. Scioto No. 11CA3449, 2012-Ohio-3896, ¶ 14 (noting that while R.C. 2744.02(C) provides that an order denying a political subdivision the benefit of immunity is a final order, there is no similar statutory provision designating an order granting a political subdivision the benefit of immunity as a final order). The trial court's decision granting the County summary judgment regarding the exception in R.C. 2744.02(B)(3) is not a final order as contemplated by R.C. 2744.02(C). *See Vlcek v. Chodkowski*, 2d Dist. Montgomery No. 26078,

2015-Ohio-1943, ¶ 35-37. Moreover, Ms. Schlegel's claim for negligence remains pending and the trial court's judgment does not fulfill the requirements of R.C. 2505.02 and Civ.R. 54(B). *See Jones* at ¶ 10, 14. *See also Vlcek* at ¶ 36. Accordingly, we are without jurisdiction to consider Ms. Schlegel's argument regarding the roadway maintenance immunity exception. *See Jones* at ¶ 15. *See also Vlcek* at ¶ 36.

{¶18} There is no dispute that the County is entitled to the general grant of immunity under R.C. 2744.02(A)(1). Instead, the dispute properly before us in this assignment of error is whether the exception to immunity in R.C. 2744.02(B)(2) applies.

{¶19} Immunity contemplates two types of functions of a political subdivision: governmental and proprietary. R.C. 2744.02(A)(1). R.C. 2744.02(B)(2) provides that "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." However, "[u]nder R.C. 2744.02(B)(2), a political subdivision cannot be held liable for the negligent performance of acts by their employees with respect to a governmental function." *Williams v. Glouster*, 4th Dist. Athens No. 10CA58, 2012-Ohio-1283, ¶ 18. *See Bauer v. Brunswick*, 9th Dist. Medina No. 11CA0003-M, 2011-Ohio-4877, ¶ 5. Accordingly, the exception to immunity in R.C. 2744.02(B)(2) only applies to claims for negligence arising out of a proprietary function. *See Williams* at ¶ 17-18.

{¶20} "When a political subdivision works on its sewers it can be engaged in either a governmental or proprietary function, depending on the nature of the work." *Ivory v. Twp. of Austintown*, 7th Dist. Mahoning No. 10 MA 106, 2011-Ohio-3171, ¶ 14. *See* R.C. 2744.01(C)(2)(l) and (G)(2)(d). *See also Guenther v. Springfield Twp. Trustees*, 2d Dist. Clark No. 2010-CA-114, 2012-Ohio-203, ¶ 12. "The maintenance, destruction, operation, and upkeep

of a sewer system" is a proprietary function, whereas "[t]he provision or nonprovision, planning or design, construction, or reconstruction of a * * * sewer system" is a governmental function. R.C. 2744.01(G)(2)(d); R.C. 2744.01(C)(2)(l).  However, before deciding whether the plaintiff's negligence claim arises from the political subdivision's failure in the maintenance, operation, or upkeep of a sewer system or from the planning, design, or construction of a sewer system, a threshold question must be answered: Do the pipes, ditch, culvert, etc., constitute a sewer system?  *See Guenther* at ¶ 12.

{¶21}  Ms. Schlegel contends that the immunity exception in R.C. 2744.02(B)(2) applies because the County was negligent in performing its proprietary function of maintaining the sewer system.  Ms. Schlegel's contention is premised upon the ditch and the culverts being a sewer system.  The County argues that this immunity exception does not apply because the ditch and the culverts are not a sewer system and thereby the maintenance of the ditch and the culverts is not a proprietary function.

{¶22}  The phrase "sewer system" is not defined in R.C. Chapter 2744.  *Anderson v. Warren Loc. School Dist. Bd. of Edn.*, 4th Dist. Washington No. 16CA21, 2017-Ohio-436, ¶ 49.  *Accord McQuown v. Coventry Twp.*, 9th Dist. Summit No. 28202, 2017-Ohio-7151, ¶ 12, quoting *Guenther* at ¶ 14.  Because a "sewer system" pertains to an exception to the general grant of immunity, "the phrase should be construed more narrowly than broadly."  *Guenther* at ¶ 14.  *See McQuown* at ¶ 12, quoting *Guenther* at ¶ 14 and citing *Anderson* at ¶ 54.  In examining whether a pipe, a culvert, a ditch, drainage tiles, or a retention basin is a "sewer system" as contemplated by the immunity statute, courts look to whether the pipe, etc., is part of a larger sewer system operated by the political subdivision.  *See Engel v. Williams Cty.*, 6th Dist. Fulton No. F-07-027, 2008-Ohio-3852, ¶ 17 (assessed whether the ditch was "part of the county's sewer

system" and whether "the tiles and drain pipes * * * were ever a part of a larger storm sewer system"); *McQuown* at ¶ 24 (considered "whether the drain pipe in [appellant's] property is part of a sewer system that is operated and maintained by [the] Township"); *Economus v. Independence*, 8th Dist. Cuyahoga No. 107713, 2020-Ohio-266, ¶ 30 (examined "whether the storm sewer-drainage ditch easement area and retention basin are part of the city's storm sewer system").

{¶23} The County argued in its motion for summary judgment that the ditch and the culverts are "not part of a larger system, but rather are intended to move naturally occurring surface water under the roadway instead of over it." The County presented the affidavit of Brian Knapp, a licensed engineer employed by the Summit County Engineer's office who was in charge of designing the replacement of the two culverts located at Boyden Road and Meadowview Drive. Attached to Mr. Knapp's affidavit was an interoffice memorandum authored by him regarding the replacement of the culverts. In the memorandum, Mr. Knapp indicated that the "culverts provide drainage for runoff from Meadowview Dr[ive] and a few houses along the east side of Boyden R[oa]d." He also stated that there are catch basins on each end of the culvert that passes under Boyden Road and a manhole to turn the flow of the water from the Meadowview Drive culvert to the Boyden Road culvert. In his drainage analysis of the culverts, Mr. Knapp explained that upstream of the culverts there is approximately 57 acres consisting of residential lots and woods, while downstream of the culverts there is a small creek that flows between two lots. Mr. Knapp stated that the culvert replacement project is on the county highway and no drainage easements are required to complete the replacement project.

{¶24} Further, the County argued that there was no evidence that Ms. Schlegel paid a specific fee to the County for ditch maintenance. The County pointed to its answer to the complaint denying this particular allegation.

{¶25} Based upon the foregoing evidence,[3] the County has satisfied its initial *Dresher* burden of demonstrating that no genuine issue of material fact remained to be litigated regarding whether the ditch and the culverts are part of a larger sewer system operated by the County and the maintenance of the same was a proprietary function.

{¶26} The burden then switched to Ms. Schlegel to point to or to present evidence to show the existence of a genuine issue for trial regarding whether the ditch and the culverts are part of a larger sewer system operated by the County and the maintenance of the same was a proprietary function. *See Dresher*, 75 Ohio St.3d at 293; Civ.R. 56(E). In her brief in opposition, Ms. Schlegel argued that the ditch and the culverts were "far more than just a couple [of] pipes in the ground." Rather, Ms. Schlegel contended that the ditch and the culverts were "part of a larger system" because 1) the County also managed catch basins in conjunction with the ditch and the culverts; 2) she paid a fee to ensure that the County-managed culverts and catch basins would properly flow through maintained tributaries and into a maintained portion of the

---

[3] On appeal, the County relies upon three affidavits that were attached to its reply brief in support of summary judgment to argue that the ditch and the culverts are not a sewer system. The moving party cannot rely upon evidence attached to its reply brief in support of summary judgment to meet its initial *Dresher* burden. *Carl Ralston Ins. Agency, Inc. v. Kenneth A. Boldt Ins. Agency, Inc.*, 9th Dist. Summit No. 23016, 2006-Ohio-3916, ¶ 12. Accordingly, we cannot consider the supplemental affidavit of Mr. Knapp and the affidavits of Mr. Koontz and Ms. Rogalski in our analysis of whether the County met its initial *Dresher* burden.

Cuyahoga River; and 3) both storm water from her downspouts and gutters and sanitary water[4] from her septic system drained into the ditch and flowed through the culverts. Additionally, Ms. Schlegel argued that the culverts were part of a larger system because they were located on public property, under a public roadway, and were used to control the flow of water on Boyden Road and for the entire neighborhood.

{¶27} In support of these arguments, Ms. Schlegel cites to her own affidavit wherein she averred the following:

> At all relevant times, I have been charged a monthly sewer bill of $9.27 for "stormwater" maintenance charges, relating to the upkeep and clearance of all portions of the sewer system that keeps sewer water properly flowing from my Residence, into and through the *Summit County-maintained* sewer pipes underneath Boyden Road, into the *Summit County-maintained* sewer catch basin on the other side of Boyden Road, and then into *maintained* tributaries in Summit County that flow into a *maintained* portion of the Cuyahoga River that is located in Summit County.

(Emphasis added.) Ms. Schlegel's affidavit described the path of the flow of the water from her home to the ditch, to the culverts, to the catch basins, to tributaries, and ending at the Cuyahoga River. In doing so, Ms. Schlegel specifically identified the culverts and the catch basins as being maintained by the County but only made a general statement that the water then flowed to "maintained tributaries in Summit County that flow into a maintained portion of the Cuyahoga River that is located in Summit County."

---

[4] In its motion for summary judgment, the County argued that pursuant to the Ohio Administrative Code sanitary water is not properly discharged in a county ditch and suggested that any such discharge was improper. Whether sanitary water is permitted to flow through a ditch and a culvert is not the issue before us. Rather, the issue is whether the ditch and the culverts are part of a larger sewer system operated by the County. Based upon the discussion below, we do not need to consider the implication, if any, of the distinction between the types of water flowing through the ditch and the culverts.

{¶28} Conspicuously absent from Ms. Schlegel's affidavit was the identity of the entity or political subdivision that maintained the tributaries and the Cuyahoga River downstream of the ditch, the culverts, and the catch basins. There was no averment or other evidence that the County maintained the tributaries and a portion of the Cuyahoga River downstream. Moreover, Ms. Schlegel did not present any evidence that the County operated a sewer system upstream of the ditch and the culverts. Also, notably missing from Ms. Schlegel's affidavit is the identity of the entity or political subdivision to whom she pays the "'stormwater' maintenance charges" for the "upkeep and clearance of all portions of the sewer system[.]" There is no evidence in the record that the ditch and the culverts used to control the flow of water from Meadowview Drive and Boyden Road were part of a larger sewer system operated by the County. *See Engel*, 2008-Ohio-3852, at ¶ 17.

{¶29} In her appellate brief, Ms. Schlegel addresses the absence of this evidence by stating that she informally interviewed a NEORSD (Northeast Ohio Regional Sewer District) representative who will testify at trial that the "fee and maintenance * * * is assessed and done on behalf of the County, and includes cleaning the banks of subject downstream creek referenced in [Mr.] Knapp's Inter-Office Memorandum, which eventually flows into the Cuyahoga River and then downstream into Lake Erie[.]" Ms. Schlegel places the blame for the lack of this evidence on the County by alleging that the County chose not to take any discovery depositions despite her having disclosed the identity of the witness and the substance of the witness' testimony to the County.

{¶30} Ms. Schlegel's argument on appeal is contrary to Civ.R. 56(E) and long standing precedent regarding the burden of a non-moving party in a summary judgment motion. Upon the

County having satisfied its initial *Dresher* burden, it was incumbent upon Ms. Schlegel to file a response that "'set forth specific facts showing that there is a genuine issue for trial.'" *Dresher*, 75 Ohio St.3d at 293, quoting Civ.R. 56(E). The proper time to have presented these facts was in her response opposing the County's motion for summary judgment. *See* Civ.R. 56(E). *See also Charleston v. Vernay Laboratories, Inc.*, 2d Dist. Greene No. 88-CA-104, 1989 WL 68412, *3 (June 22, 1989). Ms. Schlegel concedes that she did not do so. "Our review of a summary judgment is limited solely to that evidence that was before the trial court at the time of its decision." *Id. See generally Owens v. French Village Co.*, 9th Dist. Wayne No. 98CA0038, 1999 WL 635722, *1 (Aug. 18, 1999). Accordingly, we cannot consider this evidence because it was not before the trial court when it made its summary judgment decision regarding whether the ditch and the culverts are a sewer. *See State Farm Fire & Cas. Co. v. Capital Roofing, LLC*, 10th Dist. Franklin Nos. 18AP-689, 18AP-691, 18AP-692, 2020-Ohio-642, ¶ 50.

{¶31} There is no dispute between the parties that the culverts are on County-owned property, that the ditch and the culverts are maintained by the County, that there are also catch basins and a manhole that are maintained by the County and used in conjunction with the culverts, and that the purpose of the ditch and the culverts is to provide drainage runoff and to control the flow of water from Meadowview Drive and Boyden Road. Based upon our explanation below, those facts do not create a genuine issue of material fact as to whether the ditch and the culverts are part of a larger sewer system operated by the County. *Compare Engel*, 2008-Ohio-3852, at ¶ 17.

{¶32} On appeal, Ms. Schlegel argues *Engel v. Williams Cty.* is distinguishable on a number of grounds and not applicable in this matter. We disagree. Our search of the case law

reveals a limited number of decisions addressing the issue of whether a ditch, culvert, pipe, etc., constitute a sewer system. Of those cases, *Engle* is most akin to the instant matter.

{¶33} *Engle* involved a wrongful death claim filed against the county and a utility company based upon an automobile accident on a county road that had flooded. *Id*. at ¶ 1-2. Appellants argued on appeal that the immunity exception in R.C. 2744.02(B)(2) applied to their claim that the county failed to maintain the ditch along the county road. *Id.* at ¶ 16. The issue before the appellate court was whether the "maintenance of the ditch adjacent to [the county road] was in effect maintenance of a 'sewer system[.]'" *Id.*

{¶34} The appellate court determined that there was no evidence in the record that the ditch next to the road at the accident site was "part of the county's sewer system[.]" *Id.* at ¶ 17. In reaching its conclusion, the appellate court recounted the testimony of the county engineer regarding the county's flood control measures taken in the area of the accident, which included the ditch. *Id.* The county engineer explained the purpose of the ditch was to move water from the road and channel it into adjacent fields. *Id.* The county referred to the ditch as a drainage ditch and there was no mention of the "drainage tiles as a sewer system or as part of such a system." *Id.* The appellate court reiterated that there was "no evidence in the record that the tiles and drain pipes used to drain the water from the road surface at the site of the accident were ever part of a larger storm sewer system." *Id.*

{¶35} This matter is similar in that a county engineer, Mr. Knapp, described the purpose of the ditch and the culverts as providing drainage runoff for Meadowview Drive and Boyden Road. While the County did not argue that the culverts were flood control measures, Mr. Knapp conducted a drainage analysis and recommended upsizing/replacing the culvert for projected flows based on 10-year and 100-year rain events. Additionally, Mr. Knapp's design plan for the

replacement of the culverts included redirecting the ditches away from the edge of the pavement to prevent storm water from pooling next to the road.

**{¶36}** In *Engel*, there was more than a ditch involved; there were also tiles and drain pipes used to drain the water from road. *Id.* at ¶ 17. Similarly, in this matter, in addition to the ditch and the culverts, there were also catch basins and a manhole used to divert water from Boyden Road. As in *Engel*, the County has maintained the ditch, the culverts, and the catch basins. Also, there is no evidence that anyone referenced the culverts as a "sewer system or as part of such a system." *Id.*

**{¶37}** Moreover, there was no evidence in the record that the County maintained or operated the areas upstream or downstream of the culvert or that Ms. Schlegel paid the County a fee to maintain the ditch, the culverts, and the catch basins. Just as in *Engel*, there is no evidence before this Court that the ditch, the culverts, and catch basins used to drain the water from Boyden Road were part of a larger sewer system operated by the County. *See id*. at ¶ 17. Based upon the foregoing, Ms. Schlegel's arguments distinguishing *Engel* are not well-taken.

**{¶38}** Additionally, on appeal Ms. Schlegel cites to evidence that supports her "position that the subject pipe was a 'sewer' pipe[.]" Ms. Schlegel's argument is misguided as it focuses entirely on the term "'sewer'" and fails to acknowledge that R.C. 2744.01(G)(2)(d) applies to a "sewer system." In furtherance of this faulty premise, Ms. Schlegel cites to statements made by Mr. Knapp and the insurance adjuster for Sagamore Hills referring to the culvert as a "storm sewer." Ms. Schlegel's argument on appeal confuses the issue by addressing the wrong question. The question is not whether the culverts are "sewer" pipes, but whether the culverts constitute a "sewer system." *See Guenther*, 2012-Ohio-203, at ¶ 12. And courts have answered that question by looking to whether the pipe, etc., is part of a larger sewer system operated by the

political subdivision. *See Engel* at ¶ 17; *McQuown*, 2017-Ohio-7151, at ¶ 24; *Economus*, 2020-Ohio-266, at ¶ 30.

{¶39} Construing the evidence in a light most favorable to Ms. Schlegel as the non-moving party, we determine that Ms. Schlegel has not satisfied her reciprocal burden of demonstrating a genuine issue of material fact as to whether the ditch and the culverts are part of a larger sewer system operated by the County and the maintenance of the same was a proprietary function. Therefore, the County cannot be exposed to liability for negligent performance of the proprietary function of maintaining a sewer system. Accordingly, we conclude that the trial court erred by denying the County's motion for summary judgment as to the immunity exception in R.C. 2744.02(B)(2).

{¶40} The County's first assignment of error is sustained.

### ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED BY NOT GRANTING IMMUNITY TO THE COUNTY AS A MATTER OF LAW PURSUANT TO R.C. 2744.02 BASED UPON THE NEED TO RECONSTRUCT RATHER THAN REPAIR THE CULVERTS IN QUESTION.

### ASSIGNMENT OF ERROR NO. 3

THE TRIAL COURT ERRED BY NOT REINSTATING IMMUNITY AS A MATTER OF LAW PURSUANT TO R.C. 2744.03(A)(5).

{¶41} In its second assignment of error, the County argues that the trial court erred when it denied the County's motion for summary judgment seeking immunity on the basis that there was a genuine issue of material fact regarding whether the remedy to the flooding was the repair of the culvert, a proprietary function, or the reconstruction of the culvert, a governmental function.

**{¶42}** In its third assignment of error, the County argues that the trial court erred when it denied the County's motion for summary judgment seeking immunity on the basis that there was a genuine issue of material fact regarding whether immunity could be reinstated to the County pursuant to R.C. 2744.03(A)(5).

**{¶43}** We decline to reach the merits of each of these assignments of error as they have been rendered moot by this Court's disposition of the County's first assignment of error. *See* App.R. 12(A)(1)(c).

### III.

**{¶44}** Summit County's first assignment of error is sustained and its second and third assignments of error are moot. The judgment of the Summit County Court of Common Pleas is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

LYNNE S. CALLAHAN
FOR THE COURT

TEODOSIO, J.
CONCURS.

CARR, P. J.
DISSENTING.

{¶45} I respectfully dissent from the judgment of the majority. I would conclude a genuine issue of material of fact remains with respect to whether the structures at issue constitute part of a sewer system. Notably, one of the exhibits submitted by Summit County mentions the word sewer several times. For example, one portion states that "[b]efore any work is started on the project, and again before final acceptance by the County of Summit, representatives and the contractor shall make an inspection of the existing sewers within the work limits which are to remain in service and which may be affected by the work." The document also notes that certain utilities may be located within the work area, including those of County of Summit Sanitary Sewer Services.

{¶46} Accordingly, I would proceed to address the merits of the remaining two assignments of error. I would overrule them as I would conclude that the trial court correctly denied the motion for summary judgment as to these issues. Further, Summit County failed to demonstrate it was entitled to judgment as a matter of law based upon R.C. 2744.03(A)(5).

APPEARANCES:

SHERRI BEVAN WALSH, Prosecuting Attorney, and MARVIN D. EVANS, Assistant Prosecuting Attorney, for Appellant.

MATTHEW S. ROMANO, Attorney at Law, for Appellee.