[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Schlegel v. Summit Cty.*, Slip Opinion No. 2024-Ohio-5678.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-5678

SCHLEGEL, APPELLANT, *v.* SUMMIT COUNTY, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Schlegel v. Summit Cty.*, Slip Opinion No. 2024-Ohio-5678.]

*Political-subdivision immunity—R.C. 2744.02(B)(3)—Exception to political-subdivision immunity in R.C. 2744.02(B)(3) for negligent failure to keep public roads in repair and free of obstructions is not restricted to losses by users of roadway—Court of appeals' judgment reversed and cause remanded to trial court.*

(No. 2023-1232—Submitted July 10, 2024—Decided December 6, 2024.)

APPEAL from the Court of Appeals for Summit County,

No. 30377, 2023-Ohio-2866.

_____

BRUNNER, J., authored the opinion of the court, which FISCHER, DONNELLY, and STEWART, JJ., joined.  KENNEDY, C.J., dissented, with an opinion joined by DEWINE and DETERS, JJ.

**BRUNNER, J.**

## I. INTRODUCTION

{¶ 1} When a portion of a roadway collapsed near appellant Roberta Schlegel's home, the resulting debris is alleged by her to have blocked a drainage culvert. During rains that occurred after the collapse, floodwaters accumulated near the corner of Schlegel's property and Schlegel's basement flooded. Schlegel sued appellee, Summit County, for the flood damage to her home, and the county defended against the suit by asserting political-subdivision immunity. The trial court and Ninth District Court of Appeals concluded that the county has political-subdivision immunity and also that the negligent-roadway-maintenance exception to immunity set forth in R.C. 2744.02(B)(3) does not apply to Schlegel's claims, because she was not a motorist or user of the roadway injured by a roadway condition.

{¶ 2} For the reasons that follow, we reverse the Ninth District, because we conclude that R.C. 2744.02(B)(3) means exactly what it says. R.C. 2744.02(B)(3) states that "political subdivisions are liable for . . . loss to . . . property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads." We find that this law is not restricted to losses by users of the roadway.

## II. FACTS AND PROCEDURAL HISTORY

{¶ 3} On October 5, 2018, Schlegel filed a complaint against Summit County in the court of common pleas, alleging that the county was negligent in its upkeep of a culvert, causing a sinkhole in Boyden Road that obstructed proper draining of water and diverted water into her yard and home, located on the southeast corner of Meadowview Drive and Boyden Road in Sagamore Hills, during rains that occurred on May 21, 25, and 28, 2017. On November 15, 2019, the county moved for summary judgment, relying on three affidavits in asserting

that it was entitled to political-subdivision immunity against liability for any flood damage to Schlegel's home.

{¶ 4} The first affidavit submitted by the county was from Brian Knapp, a licensed professional engineer from the Summit County Engineer's Office. Knapp stated that an inspection in April 2016 revealed that holes had developed in the culverts underneath Meadowview Drive and Boyden Road, which led to plans being put in place to replace both culverts as well as a catch basin. Before the replacements could occur, however, Knapp received a call from Schlegel on May 26, 2017, explaining that her basement had flooded on May 21 and 25 after a sinkhole had developed and the culvert underneath Meadowview Drive had become obstructed with debris. Knapp averred that on May 26, he witnessed a maintenance crew clean out the debris from the sinkhole, which restored water flow, and claimed that the crew placed a steel plate on the roadway over the sinkhole. Knapp admitted, however, that the crew finished cleaning the debris and placed the steel plate on the roadway sometime after he had left.[1]

{¶ 5} The second affidavit submitted by the county was from Walter Schostak, a licensed professional surveyor from the Summit County Engineer's Office. Schostak stated that the stormwater-discharge pipe leading from Schlegel's home to the drainage ditch near the corner of Meadowview Drive and Boyden Road had a downward slope of 1.03 percent. However, he also pointed out that the footer drain at the corner of Schlegel's home and the end of the discharge pipe in the drainage ditch were located 1.67 and 2.95 feet, respectively, below the lowest point of Boyden Road where water can overflow to the west. In short, although the discharge pipe sloped downward, if floodwaters rose to the level of flowing across

---

1. Knapp's testimony is potentially significant because Schlegel has alleged that flooding of her basement occurred on May 28, but she has also asserted that no flooding occurred after the debris was cleaned from the sinkhole. In short, the "after I left" reference in Knapp's affidavit is too vague for reasonable minds to reach a conclusion against Schlegel.

Boyden Road, both the start and end of the discharge pipe would be below that level.

{¶ 6} The third affidavit submitted by the county was from Jeffrey Thompson, a licensed plumber with more than 30 years of experience. Thompson opined that a gravity-operated footer drain from Schlegel's home should not have been used for stormwater and that the home's gravity-drainage system did not conform to standard plumbing practices and presented a substantial risk for basement flooding.

{¶ 7} Schlegel opposed the county's motion for summary judgment and submitted affidavits supporting her case. Schlegel offered her own affidavit stating that in the nearly 30 years she had lived in her home, the basement had never flooded except for on the three separate days at issue in May 2017. Schlegel stated that the flooding ceased when workers performed minor repairs and cleaning work to the collapsed portion of Boyden Road and to the related sewer pipes underneath the roadway and that flooding had not occurred since. Schlegel averred that a cleanup crew charged her $6,636.56 for remediation and cleanup of the water that had flooded her basement and quoted her a further fee of $52,503.42 to complete repairs of damage from the flooding to her home's structure.

{¶ 8} Schlegel also presented the affidavit of Todd Toaz, a certified erosion, sediment, and stormwater inspector with over 40 years of experience with stormwater sewer systems. Toaz stated that he personally designed and installed the stormwater sewer lines and drainage materials at Schlegel's home soon after she had purchased it in May 1992. Toaz explained that both gutter-downspout lines and the below-ground footer drains connected to the same six-inch discharge pipe, which traveled at a downward slope and discharged stormwater into the drainage ditch near the corner of Meadowview Drive and Boyden Road. Toaz further explained that the gutter-downspout lines and footer drains were not connected to the septic sewer lines at Schlegel's home.

**{¶ 9}** The county filed a reply brief in support of its summary-judgment motion and offered a supplemental affidavit from Knapp and rebuttal affidavits from David Koontz, a licensed professional engineer from the Summit County Engineer's Office, and Alison Rogalski, a water-quality supervisor for the Summit County Public Health District, Environmental Health Division. Knapp's supplemental affidavit acknowledged that the sloped discharge pipe at Schlegel's home would be acceptable in most cases if stormwater ran down the ditch line and away from the property, but he opined that the design of the discharge pipe at Schlegel's home failed to consider the potential backup of stormwater from the culverts underneath Meadowview Drive and Boyden Road. Knapp stated that when a property is next to a culvert at the low point of a road, there will normally be a backup of stormwater as it tries to enter the culvert. Rogalski confirmed that no pipe ran from Schlegel's home's septic system to the drainage ditch running parallel to Boyden Road.[2] Koontz observed that Toaz did not hold a professional engineering license.

**{¶ 10}** Schlegel filed a sur-reply brief in opposition to the county's summary-judgment motion and submitted an October 2017 report authored by Prugar Consulting, Inc., which was signed by two professional engineers from that company, Scott M. Osowski and Jerome F. Prugar, and was authenticated by an affidavit from Prugar. In that report, Prugar Consulting opined that the flooding at Schlegel's home was the result of flooding at the site of the drainage ditch and the northwest corner of the home, which caused water to flow back through the discharge pipe at the ditch toward the home and enter the basement through the basement walls, basement floor slab, and sump crock in the utility room. Prugar Consulting opined that the flooding at the drainage ditch was characteristic of

---

2. Schlegel attested in her affidavit that sewage from her home is dispersed through a septic system flowing into the ditch along Boyden Road.

damage resulting from a collapsed culvert.[3]  Consistent with these findings, Prugar Consulting observed "damage resulting from a widespread and relatively uniform accumulation of water on the floor of the basement."

{¶ 11} On March 11, 2020, the trial court granted summary judgment in part and denied it in part.  The trial court granted summary judgment in favor of the county on its assertion that the negligent-roadway-maintenance exception to political-subdivision immunity under R.C. 2744.02(B)(3) is not applicable and rejected Schlegel's argument that the county is not protected by immunity because it was negligent in maintaining the roadway (which caused the sinkhole, which blocked the culvert, which then caused the flooding).  However, the trial court found that issues of fact existed on the questions whether the drainage system at issue was a "sewer," whether the county was negligent in clearing the blocked culvert, whether any sewer backup was caused by that system's design, whether the county had discretion in its use of resources to update the drainage system, whether the remedy to the backup of floodwater could have been resolved with maintenance, and whether the flooding of Schlegel's basement was a result of a poorly designed drainage system at her home.

{¶ 12} On appeal, the Ninth District observed that there was no dispute that the county is entitled to the general grant of immunity under R.C. 2744.02(A)(1) and that the question in this case was whether the exception to immunity under R.C. 2744.02(B)(2) applied.  *Schlegel v. Summit Cty.*, 2021-Ohio-3451, ¶ 18 (9th Dist.).  The Ninth District noted that under R.C. 2744.02(B)(2), political subdivisions are

---

3. Based on Schlegel's attorney's statement that effluent from the filtration bed that is part of Schlegel's home's septic system discharged into the discharge pipe at the drainage ditch, Prugar Consulting reported that sanitary water also backed up into Schlegel's home during the flooding. However, the alleged connection between the stormwater sewer and the septic system appears to have been a misimpression on the part of Schlegel's attorney and, consequently, Prugar Consulting; however, Rogalski averred in her affidavit that the discharge ditch was not intended to carry effluent from septic systems and that no pipe appeared to run from the septic system at Schlegel's home to the discharge ditch, and Toaz stated in his affidavit that the stormwater lines he installed did not connect into the septic system.

not immune to claims of negligence for the actions of an employee arising out of a proprietary function of the political subdivision. *Id.* at ¶ 19. The appellate court also stated that under R.C. 2744.01(G)(2)(d), "[t]he 'maintenance, destruction, operation, and upkeep of a sewer system' is a proprietary function." *Id.* at ¶ 20, quoting R.C. 2744.01(G)(2)(d). The appellate court determined that there was no genuine issue of material fact on the question whether the drainage ditch and the culverts were part of a larger "sewer system" operated by the county such that the maintenance of the system was a proprietary function and that therefore the county could not be held liable for the negligent performance of maintaining a sewer system. *Id.* at ¶ 39. On that basis, the Ninth District reversed the trial court's judgment. *Id.* at ¶ 39, 44.

{¶ 13} On remand, taking into account the Ninth District's ruling on the sewer-system issue, the trial court considered whether the negligent-roadway-maintenance exception set forth in R.C. 2744.02(B)(3) applies here to the county's political-subdivision immunity. *See* R.C. 2744.02(B)(3) ("political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads"). The trial court concluded that that exception does not apply, because Schlegel is "not in the class of persons to benefit from [the county's] duty to maintain public roads because she was not a motorist or user of the roadway injured by a roadway condition." Summit C.P. No. CV-2018-10-4138, 6 (June 22, 2022). Because Schlegel was neither a motorist nor a roadway user when her home flooded, the trial court held the county immune from liability for alleged negligence and entered summary judgment in the county's favor.

{¶ 14} The Ninth District affirmed the trial court's judgment. 2023-Ohio-2866 (9th Dist.). The appellate court acknowledged that "the statute itself does not limit liability to losses occurring on the roadway." *Id.* at ¶ 13. But it concluded that the trial court correctly determined that the negligent-roadway-maintenance

exception to immunity set forth in R.C. 2744.02(B)(3) does not apply in this case. *Id.* at ¶ 13-16.

{¶ 15} Schlegel appealed to this court, and we accepted jurisdiction to review one proposition of law:

> Under R.C. § 2744.02(B)(3), political subdivisions are liable for loss to property caused by their negligent failure to keep roads in repair or negligent failure to remove obstructions from public roads, regardless of whether the resulting property damage occurs on the roadway itself, or to property nearby the obstructed roadway.

*See* 2023-Ohio-4200.

## III.  DISCUSSION

### A.  Summary-Judgment Standard

{¶ 16} Civ.R. 56(C) provides:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

We have explained:

> Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds

can only conclude that the moving party is entitled to judgment as a matter of law.  Civ.R. 56(C); *Temple v. Wean United, Inc.*[, 50 Ohio St.2d 317, 327 (1977)].  The burden of showing that no genuine issue of material fact exists falls upon the party who files for summary judgment. *Dresher v. Burt*[, 1996-Ohio-107, ¶ 19].  Once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Civ.R. 56(E).

*Byrd v. Smith*, 2006-Ohio-3455, ¶ 10; *see also Esber Beverage Co. v. Labatt USA Operating Co., L.L.C.*, 2013-Ohio-4544, ¶ 9.  In reviewing a motion for summary judgment, the trial court must give the nonmoving party "the benefit of all favorable inferences when evidence is reviewed for the existence of genuine issues of material facts."  *Byrd* at ¶ 25.  When reviewing a trial court's decision on summary judgment, appellate review is de novo, applying the same standards as the trial court.  *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 2002-Ohio-2220, ¶ 24.

### B.  Political-Subdivision Immunity

{¶ 17} R.C. 2744.02(A)(1) sets forth the immunity of political subdivisions:

Except as provided in [R.C. 2744.02(B)], a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

It is undisputed that Summit County is a political subdivision.  *See* R.C. 2744.01(F) (expressly including a "county" in the definition of a "political subdivision").

### C.  Whether an Exception to Political-Subdivision Immunity Applies

{¶ 18} R.C. 2744.02(B) grants exceptions to political-subdivision immunity.  In the first appeal of this case, the parties' centered their arguments on whether the drainage ditch and culverts were a sewer system under R.C. 2744.01(G)(2)(d) such that the exception under R.C. 2744.02(B)(2) would apply to the county's alleged negligent performance of its proprietary function of maintaining the sewer system.  *Schlegel*, 2021-Ohio-3451, at ¶ 18-39, 44 (9th Dist.).  After that issue was resolved by the Ninth District's concluding that Schlegel had not satisfied her burden of demonstrating that the ditch and culverts were part of a larger sewer system operated by the county and that the maintenance of the same was a proprietary function, *id.* at ¶ 39, we declined jurisdiction over her appeal to this court, *see Schlegel v. Summit Cty.*, 2022-Ohio-258.

{¶ 19} The only remaining exception to political-subdivision immunity at issue then is whether the county, as a political subdivision, is "liable for injury, death, or loss to person or property caused by [its] negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads," R.C. 2744.02(B)(3).  The county argues, consistent with the Ninth District's judgment, *see* 2023-Ohio-2866 at ¶ 13-16 (9th Dist.), that this statutory language imposes liability only when the failure to keep public roads in repair and remove obstructions results in damage to a motorist using the road.  Schlegel argues that no such textual limitation exists and that the negligent-roadway-maintenance exception therefore applies.  She asserts that the county may be held liable for the flood damage to her home resulting from the county's failure to keep the roadway at issue in repair.

{¶ 20} Absent textual ambiguity, we do not look beyond a statute's text.

> "The intention of the legislature is to be collected from the words they employ." *United States v. Wiltberger*, 18 U.S. 76, 95, 5 L.Ed. 37 (1820). Therefore, "[t]he question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact." *Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus. "When the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said," *Jones v. Action Coupling & Equip., Inc.*, 98 Ohio St.3d 330, 2003-Ohio-1099, 784 N.E.2d 1172, ¶ 12, and apply it as written, *Summerville v. Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, 943 N.E.2d 522, ¶ 18.

(Bracketed text in original.) *State v. Fork*, 2024-Ohio-1016, ¶ 13. Contrary to the trial court's judgment, R.C. 2744.02(B)(3) contains no limitation restricting the "class of persons" injured or suffering loss to property to "motorist[s] or user[s] of the roadway," Summit C.P. No. CV-2018-10-4138 at 6 (June 22, 2022). Under R.C. 2744.02(B)(3), any person may seek to hold a political subdivision "liable for . . . loss to . . . property caused by [the political subdivision's] negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads." Even the Ninth District expressly acknowledged that the text of R.C. 2744.02(B)(3) "does not explicitly indicate that loss must occur on the road itself." 2023-Ohio-2866 at ¶ 16 (9th Dist.). We agree. R.C. 2744.02(B)(3) states that "political subdivisions are liable for . . . loss to . . . property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads," and this statutory language must be applied as written, *see Fork* at ¶ 13. Because this statutory language is plain and unambiguous and conveys a clear and definite meaning, this ends and settles the legal analysis. *See id.*

**{¶ 21}** The dissent argues that "the property damage to . . . Schlegel's home was . . . caused by a deteriorated, or collapsed, culvert underneath a public road, not by the public road itself." Dissenting opinion, ¶ 27. The dissent argues that a culvert is not a "public road" within the definition provided in R.C. 2744.01(H) or by any standard dictionary definition of the term. *See id.* at ¶ 31-34. Thus, the dissent reasons, *see id.* ¶ 38-39, the damage to Schlegel's home could not possibly have been caused by the county's "negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads" under R.C. 2744.02(B)(3). However, the claim in this case is not that a culvert is, itself, a public road. The claim (and the evidence offered by Schlegel) is that the public road collapsed into the culvert, that the resulting debris blocked stormwater, and that this blockage caused flooding, damage, and loss to Schlegel's home. Manifestly, a public road with a sinkhole in it leading to a subsurface drainage culvert large enough to affect the operation of the culvert below is not a public road that is "in repair" and free of "obstructions," R.C. 2744.02(B)(3). In short, the dissent's assertion that a culvert is not a public road is inapposite as applied to the facts of this case. Moreover, a duty to repair and maintain a road extends also to the "road bed." *Royce v. Smith*, 68 Ohio St.2d 106, 112-113 (1981) (duty to maintain roads does not extend to signs but does include the "road bed"); *see also St. Louis & San Francisco RR. Co. v. Fithian*, 106 Ark. 491, 501 (1913) (duty to maintain railroad track extends to "road bed"). Were it otherwise, political subdivisions and companies that construct or maintain roads could endanger public safety and escape liability merely by laying a skin of thin paving atop a dilapidated road, without regard to how prone that road might be to subsiding or collapsing.

**{¶ 22}** There does seem to be a remaining question of fact in this case about whether the roadway collapse blocked the culvert and proximately caused the flooding in Schlegel's basement. That is, did the county's "negligent failure to keep [the] public road[] in repair" *result in* "loss to . . . [Schlegel's] property" under R.C.

2744.02(B)(3)? When the statute was drafted, it may not have been imagined that a collapsed roadway could cause a flood that would cause off-roadway property damage, but there is a likelihood of some off-roadway harm if a roadway is not properly maintained. For instance, if the sinkhole in this case had caught the tire of a passing truck and caused the driver to lose control and smash through Schlegel's house, it is doubtful that anyone would question the applicability of R.C. 2744.02(B)(3), either to the driver or to Schlegel. The fact that the precise scenario here may not have been foreseen by the legislative drafters does not mean that the statutory text implicitly excludes all off-roadway harm; "[t]he question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact," *Slingluff* at paragraph two of the syllabus; *see also Fork* at ¶ 13, quoting *Jones* at ¶ 12 ("'When the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said' . . . ."). Accordingly, we reverse the Ninth District's judgment.

### D. Whether Political-Subdivision Immunity Is Restored

{¶ 23} After an exception to political-subdivision immunity is identified as applicable, the next question in the analysis is whether any defense set out in R.C. 2744.03 restores immunity. *Lambert v. Clancy*, 2010-Ohio-1483, ¶ 9. R.C. 2744.03(A) sets forth several factual and legal circumstances that a political subdivision might assert to restore immunity "[i]n a civil action brought against [the] political subdivision . . . to recover damages for . . . loss to . . . property allegedly caused by any act or omission in connection with a governmental or proprietary function."

{¶ 24} In its brief, the county argues that even if the negligent-roadway-maintenance exception to political-subdivision immunity applies, immunity would be restored under R.C. 2744.03(A)(5) because the situation in this case concerned "the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources"

and the "judgment or discretion was [not] exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."  Conversely, Schlegel argues that none of the defenses in R.C. 2744.03 apply.  However, neither the trial court nor the Ninth District addressed these matters; in fact, the Ninth District expressly declined to address this issue, 2023-Ohio-2866 at ¶ 19 (9th Dist.) (because "the trial court correctly concluded that the exception to immunity in R.C. 2744.02(B)(3) does not apply to the facts of this case, there was no need for the trial court, or this Court, to address whether R.C. 2744.03 applies").  Moreover, this issue is beyond the scope of the proposition of law we accepted to review.  In addition to the unresolved questions of fact discussed above, our reversal of the Ninth District's judgment returns to the trial court on remand the question whether immunity may be restored.

## IV.  CONCLUSION

{¶ 25} For the reasons set forth in this opinion, having settled the law in this instance regarding R.C. 2744.02(B)(3), we reverse the judgment of the Ninth District Court of Appeals and remand this case to the trial court so that the trial court may consider the issue of proximate cause and, if appropriate, whether any defense set out in R.C. 2744.03 restores the county's immunity, consistent with the law and this opinion.

Judgment reversed

and cause remanded to the trial court.

_____

**KENNEDY, C.J., joined by DEWINE and DETERS, JJ., dissenting.**

{¶ 26} I dissent from the majority's decision to reverse the judgment of the Ninth District Court of Appeals.  The deteriorated condition of a culvert underneath a public road—and the alleged flooding of a home that resulted because of it—does not constitute a "negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads" within the meaning of the "public roads" exception to political-subdivision immunity set forth in R.C. 2744.02(B)(3).

{¶ 27} This exception does not apply because a culvert underneath a roadway is not part of a "public road" within the meaning of R.C. 2744.01(H). Further, R.C. 2744.02(B)(3) requires the injury, death, or loss to person or property to be *caused by* the political subdivision's negligent failure to keep public roads in repair and free from obstructions. Here, however, the property damage to appellant Roberta Schlegel's home was allegedly caused by a deteriorated, or collapsed, culvert underneath a public road, not by the public road itself. For this reason, I would affirm the judgment of the Ninth District affirming the trial court's grant of summary judgment to appellee, Summit County.

**LAW AND ANALYSIS**

***Statutory Construction***

{¶ 28} Reviewing R.C. 2744.01(H) and R.C. 2744.02(B)(3) presents a straightforward question of statutory interpretation. As we explained long ago, "[t]he question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact." *Slingluff v. Weaver*, 66 Ohio St. 621 (1902), paragraph two of the syllabus. R.C. 1.42 guides our analysis, providing that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." And "[w]hen the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said." *Jones v. Action Coupling & Equip., Inc.*, 2003-Ohio-1099, ¶ 12, citing *Symmes Twp. Bd. of Trustees v. Smyth*, 2000-Ohio-470, ¶ 12.

{¶ 29} By contrast, a statute is ambiguous only when its text supports "two equally persuasive and competing interpretations of the law." *State ex rel. Ferrara v. Trumbull Cty. Bd. of Elections*, 2021-Ohio-3156, ¶ 21. Therefore, "[w]hen interpreting a statute, a court does not declare a statute to be ambiguous merely because there are two different ways to define a statutory term. Instead, the court must simply read the language of the statute, as informed by the canons of construction and context, and determine whether one best reading emerges." *State v. Gwynne*, 2023-Ohio-3851, ¶ 20 (lead opinion).

***The "Public Roads" Exception***

{¶ 30} R.C. 2744.02(B)(3) provides that "political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads." Additionally, R.C. 2744.01(H) defines "public roads" to mean "public roads, highways, streets, avenues, alleys, and bridges within a political subdivision." "Public roads" does not include "berms, shoulders, rights-of-way, or

16

traffic control devices unless the traffic control devices are mandated by the Ohio manual of traffic control devices." R.C. 2744.01(H).

### The Limitation of "Public Roads"

{¶ 31} The General Assembly has given a definition for "public roads," and "[b]ecause a definition was provided by the General Assembly, R.C. 2744.01(H) is the exclusive definition of public road for purposes of determining sovereign immunity from all claims that allege a negligent failure to maintain," *Baker v. Wayne Cty.*, 2016-Ohio-1566, ¶ 18 (lead opinion). None of the words or phrases in R.C. 2744.01(H) have acquired a technical or particular meaning, whether by legislative definition or otherwise, so the usual and ordinary meaning applies to each. R.C. 1.42; *see Baker* at ¶ 20 (lead opinion), citing R.C. 1.42 and *Weaver v. Edwin Shaw Hosp.*, 2004-Ohio-6549, ¶ 12. And to determine the usual, normal, or customary meaning of a word, we may rely on its dictionary definition. *Athens v. McClain*, 2020-Ohio-5146, ¶ 30. Important here, the statutory definition of "public roads" does not include the word "culverts." But R.C. 2744.01(H) does identify what "public roads" "means": "public roads, highways, streets, avenues, alleys, and bridges."

{¶ 32} "Highway" is defined as "a public road or way (as a footpath, road, or waterway) including the right-of-way." *Webster's Third New International Dictionary* (2002). "Street" is defined as "a paved road." *Id.* "Avenue" is defined as "a city street esp. when broad and attractive." *Id.* "Alley" is defined as "a narrow street wide enough for only one vehicle." *Id.* And "bridge" is defined as "a structure erected over a depression or an obstacle to travel (as a river, chasm, roadway, or railroad) carrying a continuous pathway or roadway (as for pedestrians, automobiles, or trains)." *Id.* The definitions for each of these words reveal a common theme—they are defining public works that are part of the *traveled roadway*. That is, these aspects of the statutory definition of "public roads" involve the surface on which vehicles drive.

**{¶ 33}** By contrast, "culvert" is defined as "a transverse drain or waterway (as *under* a road, railroad, or canal)." (Emphasis added.) *Id.* It is not part of the traveled roadway; instead, it is a public work located underneath a public road. For this reason, a culvert is plainly outside the statutory definition of "public roads" provided in R.C. 2744.01(H).

**{¶ 34}** Further, R.C. 2744.01(H) uses the word "include"—instead of "means"—to identify what is *not* part of the statutory definition of "public roads." In doing so, the legislature provides an inexhaustive list. *See* Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 132 (2012) (the verb "to include" introduces examples and is not an exhaustive list); *see also Groman v. Commr. of Internal Revenue*, 302 U.S. 82, 86 (1937) ("when an exclusive definition is intended the word 'means' is employed, . . . whereas here the word used is 'includes' "). The General Assembly therefore excluded from the definition of "public roads" more than just berms, shoulders, rights-of-way, and certain traffic-control devices. A culvert is like all these public works—each is distinct from a roadway and separate from its traveled surface. And since a culvert is not a public road, highway, street, avenue, alley, or bridge, it is not part of the statutory definition of "public roads."

**{¶ 35}** In this case, the deteriorated condition of a culvert—because of the county's alleged negligence in failing to repair, maintain, or clear it—purportedly led to the flooding of Schlegel's home. However, the culvert is not part of a "public road" as that term is defined in R.C. 2744.01(H). Therefore, the county's alleged negligence does not trigger the "public roads" exception to political-subdivision immunity, and the county is entitled to summary judgment on claims that it negligently failed to keep the public road in repair and free from obstruction.

**{¶ 36}** The majority implicitly concedes that a culvert is not a public road, but then erroneously determines that the "duty to repair and maintain a road extends also to the 'road bed,' " majority opinion, ¶ 21. The majority cites two cases to support its assertion that the underlying "road bed" is part of the "public road"—

18

neither case is persuasive. First, the majority misreads *Royce v. Smith*, 68 Ohio St.2d 106 (1981); the term "road bed" used in *Royce* refers to the surface of the public road that vehicles travel on, not to the foundation underneath the road. *See id.* at 112-113 ("*Ditmyer*, which disallowed claims alleging negligence on the part of the county commissioners for failure to remove snow from the roadway, construed R.C. 305.12 as imposing liability only for negligence in connection with the repair of the actual 'road bed.' "), citing *Ditmyer v. Lucas Cty. Bd. of Cty. Commrs.*, 64 Ohio St.2d 146 (1980). Second, in referring to *St. Louis & San Francisco RR. Co. v. Fithian*, 106 Ark. 491, 501 (1913), the majority improperly relies on a case regarding Arkansas's duty of ordinary care for railroad-track construction and maintenance to posit that Ohio's definition of "public roads" set forth in R.C. 2744.01(H) must include the underlying "road bed." *Fithian*, however, concerned whether the testimony provided at trial was sufficient to support the jury's verdict in a negligence action against a railroad company. *Fithian* at 92-93. The Supreme Court of Arkansas did not discuss limitations on the company's duty of care in constructing and maintaining the railroad track, nor did it engage in statutory construction concerning the term "road bed." Therefore, *Fithian* is of little value in analyzing the scope of a "public road" for an Ohio statute about political-subdivision liability.

{¶ 37} With its faulty reasoning, the majority then suggests that a paved-over "dilapidated road" (i.e., a defective road bed) would constitute a negligent failure to keep the public road in repair. *See* majority opinion at ¶ 21. But the failure to keep the foundation underneath the public road in repair does not by itself impose liability on a political subdivision under R.C. 2744.02(B)(3). Rather, liability is narrowly imposed for injury, death, or loss to person or property *caused by* the negligent failure to repair or remove obstructions from the traveled surface of the public road, R.C. 2744.02(B)(3), not from the surrounding components of the road like the berm or shoulder, *see id.*; R.C. 2744.01(H); *see also Pelletier v.*

*Campbell*, 2018-Ohio-2121, ¶ 28-29 (the "devil strip" between a road and a sidewalk is excluded from the definition of the term "public roads"); *Baker*, 2016-Ohio-1566, at ¶ 24 (lead opinion) ("an edge drop at the limit of a paved road is part of the berm or shoulder and is specifically excluded from the definition of public road"). Therefore, in asserting that the "road bed" underneath the public road is part of the statutory definition of "public roads," the majority erroneously expands the limited definition of "public roads" set forth in R.C. 2744.01(H).

### *Causation*

**{¶ 38}** Next, even if we consider the sinkhole in Boyden Road to be a negligent failure to keep that public road in repair and free from obstructions pursuant to R.C. 2744.02(B)(3), the causation requirement of R.C. 2744.02(B)(3) is still missing in this case. This is because R.C. 2744.02(B)(3) requires the injury or loss to person or property to be "caused by" the political subdivision's negligent failure to keep the public road in repair and free from obstructions. And here, any negligence in failing to repair the sinkhole did not cause the damage to Schlegel's home. Instead, it was the deteriorated condition of the culvert underneath the public road that blocked the flow of water and caused the flooding. Regardless of whether a public road was above the culvert, the culvert was in disrepair—with holes—and needed to be replaced. Nothing on the roadway led to this condition. And if the sinkhole was repaired and the culvert was not, the deteriorated culvert would continue to block the flow of water and cause flooding. Therefore, because the county's alleged negligence in failing to repair, maintain, or clear the culvert—and not the failure to remedy the sinkhole—purportedly caused the damage to Schlegel's home, the "public roads" exception to political-subdivision immunity, R.C. 2744.02(B)(3), does not apply in this case.

**{¶ 39}** Further, as we have previously explained, the purpose of R.C. 2744.02(B)(3) is to limit political-subdivision liability to roadway injuries and deaths. *See Pelletier* at ¶ 31, citing *Howard v. Miami Twp. Fire Div.*, 2008-Ohio-

2792, ¶ 29. The General Assembly amended R.C. 2744.02(B)(3) in response to this court's decisions that construed the "public roads" exception to political-subdivision immunity to apply to conditions that were not actually on the roadway. *Id.* at ¶ 24, citing *Howard* at ¶ 27-28. The amended version of R.C. 2744.02(B)(3) superseded this court's precedent and imposed liability only for conditions that are actually on the public road. *Id.*; *see also Howard* at ¶ 29 ("The General Assembly, in furtherance of its goal, used the word 'obstructions' in a deliberate effort to impose a condition more demanding than a showing of a 'nuisance' [on the public road] . . . ."). R.C. 2744.02(B)(3) therefore precludes recovery when the cause of injury, death, or loss to person or property does not originate on the public road.

## CONCLUSION

{¶ 40} In enacting the Political Subdivision Tort Liability Act, as codified in R.C. Ch. 2744, the General Assembly sought to "conserve[] the fiscal resources of political subdivisions by limiting their tort liability" while "permit[ting] injured persons, who have no source of reimbursement for their damages, to recover for a tort committed by the political subdivisions." *Menefee v. Queen City Metro*, 49 Ohio St.3d 27, 29 (1990). "Balancing these competing interests necessarily required the legislature to draw lines regarding what claims may be pursued against a political subdivision and what damages an injured person may recover from a political subdivision." *McConnell v. Dudley*, 2019-Ohio-4740, ¶ 31. "It is the function of the General Assembly to weigh such competing policy concerns when enacting legislation," *id.* at ¶ 32, and it is not the role of this court to second-guess the policy decisions of the legislative branch, *see Pelletier*, 2018-Ohio-2121, at ¶ 32. "'Our role, in exercise of the judicial power granted to us by the Constitution, is to interpret and apply the law enacted by the General Assembly.' " (Bracketed text omitted.) *Id.*, quoting *Houdek v. ThyssenKrupp Materials N.A., Inc.*, 2012-Ohio-5685, ¶ 29.

{¶ 41} In defining "public roads," the General Assembly has acted "'to limit political-subdivision liability for roadway injuries and deaths.' " *Id.* at ¶ 31, quoting *Howard* at ¶ 29. R.C. 2744.02(B)(3) creates an exception to political-subdivision immunity only for injury, death, or loss to person or property caused by a political subdivision's negligent failure to keep public roads in repair and free from obstructions—it does not create an exception for a county's negligent failure to repair or clear a culvert. If the statutory definition of "public roads" provided in R.C. 2744.01(H) should include "culvert" or the "road bed" foundation underneath the public road—which it currently does not—that is a decision for the General Assembly to make, not this court.

{¶ 42} Therefore, I would affirm the judgment of the Ninth District Court of Appeals affirming the trial court's grant of summary judgment to the county. Because the majority does otherwise, I dissent.

_____

Law Office of Matthew S. Romano, L.L.C., and Matthew S. Romano, for appellant.

Elliot Kolkovich, Summit County Prosecuting Attorney, and Marrett W. Hanna and John F. Galonski, Assistant Prosecuting Attorneys, for appellee.

_____